XAVIER BECERRA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General
LARA HADDAD
Deputy Attorney General
State Bar No. 319630
  300 South Spring Street, Suite 1702
  Los Angeles, CA  90013
  Telephone:  (213) 269-6250
  Fax:  (213) 897-5775
  E-mail:  Lara.Haddad@doj.ca.gov
*Attorneys for Defendant Attorney General of California*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IRENE SEAGER,**<br><br>Plaintiff,<br><br>v.<br><br>**UNITED TEACHERS LOS ANGELES; AUSTIN BEUTNER, in his official capacity as Superintendent of the Los Angeles Unified School District; XAVIER BECERRA, in his official capacity as Attorney General of California,**<br><br>Defendants. | Case No. 2:19-cv-00469<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT CALIFORNIA ATTORNEY GENERAL'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date:          August 16, 2019<br>Time:         10:30 a.m.<br>Judge:        Hon. Josephine L. Staton<br>Action Filed: January 22, 2019 |

**REQUEST FOR JUDICIAL NOTICE**

Defendant Xavier Becerra, in his official capacity as Attorney General of California ("Attorney General"), respectfully requests that this Court take judicial notice, pursuant to Federal Rule of Evidence 201(c)(2), of the following document in support of his Motion for Judgment on the Pleadings: A copy of Senate Bill No. 866 (2017-2018 Reg. Sess.; Cal. Stats. 2018, ch. 53) ("SB 866"), attached hereto as **Exhibit 1**.  This document is relevant to the claims in this case, which challenges the statute's constitutionality.

Federal Rule of Evidence 201(b) provides that a judicially noticed fact must be one "not subject to reasonable dispute" because it is either (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be readily questioned.  Fed. R. Evid. 201(b).  State legislative bills regarding statutes relevant to the action before the court are appropriate subjects for judicial notice.  *See, e.g., Territory of Alaska v. Am. Can Co.*, 358 U.S. 224, 227 (1959); *Daghlian v. DeVry University, Inc.*, 461 F. Supp. 2d 1121, 1145 (C.D. Cal. 2006) (citations omitted).  Thus, the Attorney General requests that this Court take judicial notice of SB 866, a state legislative bill relevant to this action.

Dated:  May 29, 2019

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General

*/s/ Lara Haddad*
LARA HADDAD
Deputy Attorney General
*Attorneys for Defendant Attorney General of California*

# EXHIBIT 1

## Senate Bill No. 866

### CHAPTER 53

An act to amend Sections 45060, 45168, 87833, and 88167 of the Education Code, to amend Sections 1150, 1152, 1153, 1157.3, 1157.10, 3550, 3551, 3552, 3555.5, 3556, 18502, 18525.3, 18528, 18577, 18939, 18950, 19050.4, 19054.1, 19057.1, 19057.3, 19243, 19816.18, 19827.2, 22944.5, 23725, 31552.5, 71638, and 71824 of, to add Sections 1157.12, 3553, and 19995.1.5 to, to repeal Section 19995.5 of, and to repeal and add Section 19051 of, the Government Code, to amend Section 101853.1 of the Health and Safety Code, to add Section 2716.5 to the Penal Code, to add Section 14038 to, to add Article 4 (commencing with Section 14040) to Chapter 3 of Division 7 of, and to add and repeal Article 5 (commencing with Section 14100) of Chapter 3 of Division 7 of, the Unemployment Insurance Code, and to amend Section 3.60 of the Budget Act of 2017 (Chapter 181 of the Statutes of 2017), relating to employment, and making an appropriation therefor, to take effect immediately, bill related to the budget.

[Approved by Governor June 27, 2018. Filed with Secretary of State June 27, 2018.]

LEGISLATIVE COUNSEL'S DIGEST

SB 866, Committee on Budget and Fiscal Review. Employment.

(1)  Existing law prescribes various duties of the Controller in connection with deductions requested by employee organizations and other bona fide organizations regarding requests for deductions from the salaries and wages of their members. Existing law defines employee organization in this context as one which represents employees of the state or the California State University and which is registered or recognized, as specified, and defines bona fide association as an organization of employees or former employees of an agency of the state and the California State University, which does not have as one of its purposes representing employees in their employment relations. Existing law prescribes the duties of the governing boards of school districts in regard to requests by certificated and classified employees for deductions from their salaries and wages and prescribes similar duties for the governing boards of community college districts with respect to academic and classified employees. Existing law authorizes a trial court employee or interpreter to permit a dues deduction from his or her salary in the same manner provided to public agency employees pursuant to specified law applicable to the state and the Controller, as described above.

This bill would revise and recast these provisions. The bill would expand certain authorizations and requirements currently applicable to the Controller and employees of the state and California State University to apply also to

the Regents of the University of California, the Judicial Council, counties, cities, and public authorities, including transit districts, among others, and would correspondingly broaden the definition of an employee organization. In this context, the bill would authorize employee organizations and bona fide associations to request payroll deductions and would require public employers to honor these requests. The bill would prohibit requiring an employee organization that certifies that it has and will maintain individual employee authorizations to provide a copy of an individual authorization to the public employer or the Controller unless a dispute arises about the existence or terms of the authorization. The bill would prescribe procedures for the making, canceling, and changing a deduction for an organization or association and would require that these requests be directed to the employee organization rather than the public employer or Controller. The bill would require the public employer or Controller to rely on information provided by the employee organization regarding whether deductions were properly canceled or changed. The bill would require the employee organization to indemnify the public employer or Controller for any claims made by employees for deductions made in reliance on information provided by the employee organization.

The bill would revise authorizations granted to state employees and retired employees to make deductions for dues in, and for services provided by, a bona fide organization, as specified, instead to apply to employee organizations for dues in, or for any other service, program, or committee provided or sponsored by, an employee organization or a bona fide association and would apply them to the employers described above generally. The bill would require employers to honor these authorizations and would require that the revocability of an authorization be determined by its terms. The bill would apply the changes described above to trial court employees and court interpreters, as specified. The bill would distinguish governing boards of school districts and of community college districts from other public employers for the purposes of transmitting payroll deductions to professional organizations or employee organizations. The bill would grant generally equivalent authorizations to, and requirements in connection with, the certificated and classified employees of governing boards of school districts, which the bill would revise to refer to as public school employers, and to certificated and classified employees of community college districts. The bill would also make clarifying, conforming, and other nonsubstantive changes.

By increasing the duties of local agencies, school districts, and community college districts, this bill would impose a state-mandated local program.

(2)  Existing law prohibits the state and specified local public employers from deterring or discouraging public employees from becoming or remaining members of an employee organization. Existing law grants the Public Employment Relations Board jurisdiction over violations of these provisions.

This bill would prohibit a public employer from deterring or discouraging applicants to be public employees, as defined, from becoming or remaining

members of an employee organization. The bill would prohibit a public employer from deterring or discouraging public employees or applicants to be public employees from authorizing representation by an employee organization or authorizing dues or fee deduction to an employee organization. This bill would include Judicial Council in the definition of "public employer" and would also include a public transit district with respect to its public employees who are not in bargaining units not otherwise subject to specified law regulating public employee collective bargaining. The bill would except specified employers from the enforcement jurisdiction of the Public Employment Relations Board.

If an employee organization has been recognized or certified as an exclusive representative of employees in a bargaining unit, the bill would require a public employer that elects to provide certain mass communications, as defined, to meet and confer with the representative concerning the content of the communication. If the employer and the representative do not come to agreement about the content of the communication, the bill would require a public employer that elects to disseminate the mass communication to distribute to the employees, with its communication, a communication of reasonable length provided by the exclusive representative. By creating new duties for various local agencies, this bill would impose a state-mandated local program. The bill would except certain communications from these provisions.

(3)  Existing law requires the state and specified local public employers to grant the exclusive representative of those employees access to new employee orientations. Existing law requires the exclusive representative to receive at least 10 days' notice in advance of an orientation and requires that the structure, time, and manner of exclusive representative access be determined through mutual agreement between the employer and the exclusive representative, subject to specified requirements, including compulsory interest arbitration, as defined. Existing law requires an affected public employer to provide the exclusive representative with the name, job title, department, work location, work, home, and personal cellular telephone numbers, personal email addresses on file with the employer, and home address of newly hired employees within 30 days of hire or by the first pay period of the month following hire. Existing law also requires affected public employers to provide the exclusive representative with this information for all employees in a bargaining unit at least every 120 days, except as specified.

This bill would expand the application of these provisions to the Judicial Council. The bill would also expand the application of these provisions to public transit districts with respect to their public employees who are in bargaining units not subject to specified law regulating public employee collective bargaining. By creating new duties for various local agencies, this bill would impose a state-mandated local program.

This bill would also require that the date, time, and place of new employee orientations, as described above, be confidential and prohibit sharing that information with anyone other than employees, the exclusive representative,

or a vendor that is contracted to provide a service for purposes of the orientation.

(4) Existing law creates the Department of Human Resources, which succeeds to and is vested with all of the powers and duties exercised and performed by the Department of Personnel Administration. Existing law specifically grants the department the powers, duties, and authority necessary to operate the state civil service system in accordance with Article VII of the California Constitution, the Government Code, the merit principle, and applicable rules duly adopted by the State Personnel Board.

Existing law requires the State Personnel Board to prescribe rules consistent with a merit-based civil service system to govern classification, examinations, probationary periods, disciplinary actions, and other matters related to the board's authority under the California Constitution.

This bill would extend these rulemaking requirements to appointments.

(5) Existing state civil service law defines a "transfer" to mean, among other things, the appointment of an employee to a different class that has substantially the same level of duties, responsibility, and salary as the employee's current class under the same or another appointing authority.

This bill would instead define "transfer" to mean the appointment of an employee to a different class to which the employee satisfies the minimum qualifications and that has substantially the same level of duties, responsibility, and salary, as determined by board rule, and would make related conforming changes.

(6) Existing law authorizes the Department of Human Resources or a designated appointing power to receive applications, conduct examinations, and create eligible lists continuously; however, this authority is limited to classes of positions for which the department or a designated appointing power finds it difficult to maintain adequate eligible lists.

This bill would delete the above limitation and instead would authorize the department and designated appointing powers to receive applications, conduct examinations, and create eligible lists on a continual basis consistent with board rules.

(7) Under existing state civil service law, the Department of Human Resources administers the Limited Examination and Appointment Program (LEAP) to provide an alternative to the traditional civil service examination and appointment process to facilitate the hiring of persons with disabilities. Existing law defines a "permanent employee" to mean an employee with "permanent status," which, in turn, means the status of an employee who is lawfully retained after completion of the probationary period.

This bill would revise the definition of "permanent status" to include an employee who is lawfully appointed to his or her position after successful completion of the probationary period or job examination period under LEAP.

(8) Existing law requires vacancies in state civil service positions to be filled in a manner that is consistent with the best interests of the state from among employees holding positions in appropriate classes. Existing law

also requires promotional lists to be established to facilitate this purpose, except in limited cases.

Existing law authorizes the Department of Human Resources to prescribe the conditions under which eligibility may be transferred from one promotional list to another; however, this authority is limited to when the lists are for the same class and have been established as a result of the same or a similar examination.

This bill would delete the above limitation. The bill would additionally require the department, when prescribing conditions under which state employees and others may compete in promotional exams to attain eligibility and prescribing conditions for transfers from one promotional list to another, to act in a manner that is consistent with board rules.

(9)  Existing state civil service law prohibits a person from being appointed under a class not appropriate to the duties to be performed.

This bill would instead allow civil service appointments to only be made to a class that is appropriate for the duties, functions, and responsibilities that will be performed.

(10)  Existing law generally requires, with specified exceptions, that those eligible persons whose names and addresses represent the 3 highest ranks on a state employment list be certified to the appointing power. Existing law specifies additional rules that apply if the names on the list represent fewer than 3 ranks and authorizes both the Department of Human Resources and the Department of Corrections and Rehabilitation to provide for certifying less than 3 ranks where the size of the certified group is disproportionate to the number of vacancies.

This bill would revise and recast those provisions. The bill would require, when an appointing power seeks to fill a vacant position using an employment list, that the Department of Human Resources provide the appointing power with the certified list of the names and addresses of all eligible candidates whose scores represent the 3 highest ranks on the list. The bill would require the department, if there is more than one employment list or LEAP referral list, to provide a single certified list of eligibles that combines the names and addresses of all eligible candidates.

(11)  Existing law authorizes the appointing power, with approval of the Department of Human Resources, to appoint a successful candidate, who qualified in an examination, to an appropriate position without further examination, as specified.

This bill would eliminate the requirement that the department provide approval for these appointments.

(12)  Existing law authorizes the Department of Human Resources to self-fund or self-insure a benefit program under its administration when it is cost-effective to do so. Existing law authorizes the department to administer the self-funded or self-insured benefit program directly or to contract with a third-party administrator.

Existing law creates the Public Employees' Retirement System, the management and control of which is vested in its board of administration. Existing law creates the Public Employees' Retirement Fund, which is a

— 6 —

continuously appropriated trust fund under the exclusive control of the board, to be administered in accordance with the Public Employees' Retirement Law (PERL), solely for the benefit of the members and retired members of the system and their survivors and beneficiaries. PERL prohibits expenditure of retirement fund moneys for purposes other than administration of the system, investments for the benefit of the system, reduction of employer contributions, and the provision of benefits to the members and retired members of the system and their survivors and beneficiaries. PERL defines "benefit" for its purposes.

This bill would require the Public Employees' Retirement System to assist the Department of Human Resources by providing retiree names and addresses to the department for the purpose of notifying those retirees of eligibility for enrollment into specified benefit programs offered by the department. The bill would require information provided to the department to be treated as confidential by the department. By authorizing moneys in a continuously appropriated fund to be spent for a new purpose, this bill would make an appropriation.

(13)  Existing law requires the Department of Human Resources to review and analyze specified existing information regarding the setting of salaries and also declares the Legislature's intent to establish a state policy of setting salaries for female-dominated jobs on the basis of comparability of the value of the work.

This bill would instead require the department's review and analysis to include studies from other jurisdictions regarding the setting of salaries for jobs that employ a higher proportion of females than males. The bill would make related changes to the legislative intent statement regarding the state's policy of setting salaries.

(14)  Existing law requires the Department of Human Resources to devise plans for, and cooperate with appointing powers and other supervising officials in the conduct of, employee training programs so that the quality of service rendered by persons in the state civil service may be continually improved. Existing law authorizes the department to enter into agreements, which the Director of General Services is required to approve, to make available their services with specified state and local entities.

This bill would authorize the department to provide training programs to any public employee or officer so that the quality of service rendered by those persons may be continually improved. The bill would define "public employee or officer" to refer to specified state, local, and federal entities. The bill would authorize the department to collect registration fees from the employing entity of the employee or officer participating in the training without entering into a written agreement as described above. The bill would also repeal an obsolete provision establishing the State Employee Scholarship Fund, which was abolished in 2001.

(15)  The Public Employees' Medical and Hospital Care Act (PEMHCA), which is administered by the Board of Administration of the Public Employees' Retirement System, prescribes methods for calculating state employer and employee contributions for postemployment health care

benefits for eligible retired public employees and their families and for the vesting of these benefits. PEMHCA establishes the Annuitants' Health Care Coverage Fund, which is continuously appropriated, for the purpose of prefunding health care coverage for annuitants, and prescribes a schedule of employee contribution percentages for this purpose based on membership in specified bargaining units. Existing law requires state and employee contributions based on those percentages to be deposited in the Annuitants' Health Care Coverage Fund.

This bill would authorize the Director of the Department of Human Resources to establish employee contribution percentages, pursuant to a specified goal, for prefunding retiree health care in relation to pensionable compensation for specified state employees who are not related to specified bargaining units who are excepted from the definition of "state employee" with respect to collective bargaining and for officers or employees of the executive branch of state government who are not members of the civil service. By increasing contributions to a continuously appropriated fund, this bill would make an appropriation. The bill would require the state to match the contributions of these employees and officers.

(16) Existing law generally authorizes the amendment of a county charter by proposals submitted by the governing body or by a petition signed by 10% of the qualified electors of the county, computed upon the total number of votes cast in the county for all candidates for Governor at the last general election at which a Governor was elected, as specified. Existing law additionally authorizes the amendment of the charter of the County of San Diego by proposals submitted to the county electors by the board of supervisors or by a petition signed by 10% of the qualified electors in the county, to require that candidates for county office be elected at the general election, as specified.

This bill would, for an amendment to the charter of the County of San Diego to require that candidates for county office be elected at the general election, clarify that the calculation of the 10% of qualified electors in the county is computed upon the total number of votes cast in the county for all candidates for Governor at the last general election at which a Governor was elected, as specified. This bill would apply this provision retroactively, commencing January 1, 2018, and would require the elections official to examine or reexamine whether the number of valid signatures filed by the proponents is sufficient to qualify a measure for the ballot pursuant to these provisions, to the extent that petition signatures for an initiative measure proposing an amendment to the charter of the County of San Diego have been submitted prior to the effective date of this act.

By imposing additional duties on the local elections official, this bill would impose a state-mandated local program.

This bill would make legislative findings and declarations as to the necessity of a special statute for the County of San Diego.

(17) Existing law, the Kern County Hospital Authority Act, authorizes the board of supervisors of the County of Kern to, among other things, establish the Kern County Hospital Authority to manage, administer, and

control the Kern Medical Center. Existing law requires the board of supervisors to adopt and implement a personnel transition plan for the transfer of specified personnel from the control of the medical center by the county to the Kern County Hospital Authority. Existing law provides that certain employees of the authority may participate, subject to the personnel transition plan and the applicable memorandum of understanding, in the Kern County Employees' Retirement Association and prohibits the modification of medical center or county employment benefits for transferred employees, as provided.

This bill would require an employee hired by the authority on or after the operative date of this act to participate in the Kern County Employees' Retirement Association, as provided.

(18) Existing law requires the Department of Corrections to require of every able-bodied prisoner imprisoned in any state prison as many hours of faithful labor in each day and every day during his or her term of imprisonment as shall be prescribed by the rules and regulations of the Director of Corrections. Existing law authorizes the Director of Corrections to enter into agreements with other state agencies for the use of inmates confined in the state prisons to perform work in facilities of those state agencies for the purpose of vocational training and the improvement of job skills preparatory to release.

This bill would establish the Pre-Release Construction Trades Certificate Program within the department to increase employment opportunities in the construction trades for inmates upon release. The bill would require the department to establish a joint advisory committee, composed of representatives from specified organizations and state agencies, for the purpose of implementation of the program and specify the duties of the committee with respect to the program.

(19) Under existing law, the California Workforce Development Board is the body responsible for assisting the Governor in the development, oversight, and continuous improvement of California's workforce investment system and the alignment of the education and workforce investment systems to the needs of the 21st century economy and workforce. Existing law, until January 1, 2021, establishes the Supervised Population Workforce Training Grant Program to be administered, as provided, by the board. Existing law also establishes the Breaking Barriers to Employment Initiative to be implemented, as provided, by the board.

This bill would require the board to administer a prison-to-employment program and award grants for purposes that include the development of regional partnerships and regional plans to provide and coordinate the necessary workforce, education, supportive, and related services, as defined, that formerly incarcerated and other justice-involved individuals, as defined, need to secure and retain employment and reduce the chances of recidivism. The bill would require the board to develop, consistent with specified provisions of existing law, guidelines for the program, including, but not limited to, required regional plan content, required and optional regional plan partners, required activities of the regional partnerships, and guidelines

for the allocation of grants, including planning guidance, timelines, and selection criteria for the distribution and evaluation of grant awards.

This bill would authorize the board to adopt criteria, guidelines, and policies regarding the prison-to-employment program, as specified; would exempt those criteria, guidelines, and policies from the rulemaking provisions of the Administrative Procedures Act; and would require the board to make the criteria, guidelines, and policies available to the public. The bill would also exempt all criteria, guidelines, and polices development by the board for the administration of the Breaking Barriers to Employment Initiative from the rulemaking provisions of the Administrative Procedures Act.

(20) Existing law establishes various programs for job training and employment development, including, among others, establishing the California Workforce Development Board as the body responsible for assisting the Governor in the development, oversight, and continuous improvement of California's workforce investment.

This bill would create a 3-year pilot program in the Counties of Sacramento and Los Angeles for the purposes of increasing long-term employment opportunities for young adults with autism and autism spectrum disorder. The bill would provide that the pilot program be administered by the California Workforce Development Board and accomplish specified goals. The bill would require the board to submit a report to the Legislature on or before December 31, 2021, regarding information on the success of the program in accomplishing specified goals.

This bill would make legislative findings and declarations as to the necessity of a special statute for the Counties of Los Angeles and Sacramento.

(21) The Budget Act of 2017, as amended, authorized the Department of Finance to direct the Controller to transfer up to $146,000,000 from the General Fund to supplement the state's retirement contributions for the 2017–18 fiscal year.

This bill would revise the Budget Act of 2017 to authorize the Department of Finance, instead, to direct the Controller to transfer up to an amount identified for appropriation for unfunded state pension liabilities and prefunding postemployment benefits, as specified, equivalent to the amount described in a specified section of the Budget Act of 2017, which identifies the amount of the transfer to the Budget Stabilization Account for the 2017–18 fiscal year.

(22) Existing federal law requires the enumeration of the population of the United States every 10 years, known as the federal decennial census.

This bill would require the California Complete Count Census to submit reports relating to various aspects of the federal decennial census to the Joint Legislative Budget Committee, the Assembly Select Committee on the Census, and the Senate Select Committee on the 2020 United States Census, as provided.

(23) Existing constitutional provisions require that a statute that limits the right of access to the meetings of public bodies or the writings of public

officials and agencies be adopted with findings demonstrating the interest protected by the limitation and the need for protecting that interest.

This bill would make legislative findings to that effect.

(24)  The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.

This bill would provide that with regard to certain mandates no reimbursement is required by this act for a specified reason.

With regard to any other mandates, this bill would provide that, if the Commission on State Mandates determines that the bill contains costs so mandated by the state, reimbursement for those costs shall be made pursuant to the statutory provisions noted above.

(25)  This bill would declare that it is to take effect immediately as a bill providing for appropriations related to the Budget Bill.

Appropriation: yes.

*The people of the State of California do enact as follows:*

SECTION 1.   Section 45060 of the Education Code is amended to read:

45060.   (a)  Except as provided in Section 45061, the governing board of each public school employer, when drawing an order for the salary payment due to a certificated employee of the employer, shall reduce the order by the amount which it has been requested in a revocable written authorization by the employee to deduct for the purpose of paying the dues of the employee for membership in any local professional organization or in any statewide professional organization, or in any other professional organization affiliated or otherwise connected with a statewide professional organization which authorizes the statewide organization to receive membership dues on its behalf, or to deduct for the purpose of paying dues in, or for any other service, program, or committee provided or sponsored by, any certified or recognized employee organization, of which the employee is a bargaining unit member, whose membership consists, in whole or in part, of employees of the public school employer, and which has as one of its objectives improvements in the terms or conditions of employment for the advancement of the welfare of the employees. Any revocation of a written authorization shall be in writing and shall be effective provided the revocation complies with the terms of the written authorization.

(b)  Unless otherwise provided in an agreement negotiated pursuant to Chapter 10.7 (commencing with Section 3540) of Division 4 of Title 1 of the Government Code, the governing board shall, no later than the 10th day of each pay period for certificated employees, draw its order upon the funds of the employer in favor of the organization designated by the employee for an amount equal to the total of the dues or other deductions made with respect to that organization for the previous pay period and shall transmit the total amount to that organization no later than the 15th day of each pay period for certificated employees. When timely transmittal of dues or other

Case 2:19-cv-00469-JLS-DFM   Document 44-1   Filed 05/29/19   Page 14 of 50   Page ID #:341

payments by a county is necessary for a public school employer to comply with the provisions of this section, the county shall act in a timely manner. The governing board may deduct from the amount transmitted to the organization on whose account the dues or other payments were deducted the actual reasonable costs of making the deduction.

(c) The revocable written authorization shall remain in effect until expressly revoked in writing by the employee, pursuant to the terms of the written authorization. Whenever there is a change in the amount required for the payment to the organization, the employee organization shall provide the employee with adequate and necessary data on the change at a time sufficiently prior to the effective date of the change to allow the employee an opportunity to revoke the written authorization, if desired and if permitted by the terms of the written authorization. The employee organization shall provide the public school employer with notification of the change at a time sufficiently prior to the effective date of the change to allow the employer an opportunity to make the necessary adjustments and with a copy of the notification of the change which has been sent to all concerned employees.

(d) The governing board shall not require the completion of a new deduction authorization when a dues or other change has been effected or at any other time without the express approval of the concerned employee organization.

(e) The governing board shall honor the terms of the employee's written authorization for payroll deductions. Employee requests to cancel or change authorizations for payroll deductions for employee organizations shall be directed to the employee organization rather than to the governing board. The employee organization shall be responsible for processing these requests. The governing board shall rely on information provided by the employee organization regarding whether deductions for an employee organization were properly canceled or changed, and the employee organization shall indemnify the public school employer for any claims made by the employee for deductions made in reliance on that information.

(f) A certified or recognized employee organization that certifies that it has and will maintain individual employee authorizations shall not be required to submit to the governing board of a public school employer a copy of the employee's written authorization in order for the payroll deductions described in this section to be effective, unless a dispute arises about the existence or terms of the written authorization. The employee organization shall indemnify the public school employer for any claims made by the employee for deductions made in reliance on its notification.

SEC. 2.   Section 45168 of the Education Code is amended to read:

45168.   (a) (1) Except as provided in subdivision (b), the governing board of each public school employer when drawing an order for the salary or wage payment due to a classified employee of the employer may, without charge, reduce the order by the amount that it has been requested in a revocable written authorization by an employee who is a member of the bargaining unit to deduct for the payment of dues in, or for any other service provided by, any employee organization or bona fide association, whose

membership consists, in whole or in part, of employees of that employer, and that has as one of its objectives improvements in the terms or conditions of employment for the advancement of the welfare of those employees. Any revocation of a written authorization shall be in writing and shall be effective provided the revocation complies with the terms of the written authorization.

(2) The revocable written authorization shall remain in effect until expressly revoked in writing by the employee in accordance with the terms of the authorization. Whenever there is an increase in the amount required for the payment to the employee organization, the employee organization shall provide the employee with adequate and necessary data on the increase at a time sufficiently before the effective date of the increase to allow the employee an opportunity to revoke the written authorization, if desired and permitted by the terms of the written authorization. The employee organization shall provide the school district with notification of the increase at a time sufficiently before the effective date of the increase to allow the employer an opportunity to make the necessary changes and with a copy of the notification of the increase that has been sent to all concerned employees.

(3) Upon receipt of a properly signed authorization for payroll deductions by a classified employee pursuant to this section, the governing board shall reduce the employee's pay warrant by the designated amount in the next pay period after the governing board receives the notification.

(4) The governing board shall, on the same designated date of each month, draw its order upon the funds of the employer in favor of the employee organization designated by the employee for an amount equal to the total of the respective deductions made with respect to the employee organization during the pay period.

(5) The governing board shall not require the completion of a new deduction authorization when a dues increase has been effected or at any other time without the express approval of the concerned employee organization.

(6) The governing board shall honor the terms of the employee's written authorization for payroll deductions. Employee requests to cancel or change authorizations for payroll deductions for employee organizations shall be directed to the employee organization rather than to the governing board. The employee organization shall be responsible for processing these requests. The governing board shall rely on the information provided by the employee organization to cancel or change authorizations, and the employee organization shall indemnify the public school employer for any claims made by the employee for deductions made in reliance on that information.

(7) A classified or recognized employee organization that certifies that it has and will maintain individual employee authorizations shall not be required to submit to the governing board of a public school employer a copy of the employee's written authorization in order for the payroll deductions described in this section to be effective, unless a dispute arises about the existence or terms of the written authorization. The employee organization shall indemnify the public school employer for any claims made by the employee for deductions made in reliance on its notification.

(b)  The governing board of each public school employer when drawing an order for the salary or wage payment due to a classified employee of the employer may, without charge, reduce the order for the payment of dues to, or for any other service provided by, the certified or recognized employee organization of which the classified employee is a member, or for the payment of service fees to the certified or recognized employee organization as required by an organizational security arrangement between the exclusive representative and a public school employer as provided under Chapter 10.7 (commencing with Section 3540) of Division 4 of Title 1 of the Government Code. However, the organizational security arrangement shall provide that any employee may pay service fees directly to the certified or recognized employee organization in lieu of having the service fees deducted from the salary or wage order.

(c)  This section shall apply to public school employers that have adopted the merit system in the same manner and effect as if it were a part of Article 6 (commencing with Section 45240).

SEC. 3.   Section 87833 of the Education Code is amended to read:

87833.  (a)  Except as provided in Section 87834, the governing board of each community college district, when drawing an order for the salary payment due to an academic employee of the district, shall reduce the order by the amount which the board has been requested in a revocable written authorization by the employee to deduct for the purpose of paying the dues of the employee for membership in any local professional organization, or in any statewide professional organization, or in any other professional organization affiliated or otherwise connected with a statewide professional organization which authorizes the statewide organization to receive membership dues on its behalf, or to deduct for the purpose of paying dues in, or for any other service, program, or committee provided or sponsored by, any certified or recognized employee organization, of which the employee is a bargaining unit member, whose membership consists, in whole or in part, of employees of the community college district, and which has as one of its objectives improvements in the terms and conditions of employment for the advancement of the welfare of the employees. Any revocation of a written authorization shall be in writing and shall be effective provided the revocation complies with the terms of the written authorization.

(b)  Unless otherwise provided in an agreement negotiated pursuant to Chapter 10.7 (commencing with Section 3540) of Division 4 of Title 1 of the Government Code, the governing board shall, no later than the 10th day of each pay period for academic employees, draw its order upon the funds of the district in favor of the organization designated by the employee for an amount equal to the total of the dues or other deductions made with respect to that organization for the previous pay period and shall transmit the total amount to that organization no later than the 15th day of each pay period for academic employees. When timely transmittal of dues or other payments by a county is necessary for a community college district to comply with the provisions of this section, the county shall act in a timely manner. The governing board may deduct from the amount transmitted to the

organization on whose account the dues or other payments were deducted the actual reasonable costs of making the deduction.

(c)  The revocable written authorization shall remain in effect until expressly revoked in writing by the employee, pursuant to the terms of the written authorization. Whenever there is a change in the amount required for the payment to the organization, the employee organization shall provide the employee with adequate and necessary data on the change at a time sufficiently prior to the effective date of the change to allow the employee an opportunity to revoke the written authorization, if desired and if permitted by the terms of the written authorization. The employee organization shall provide the public school employer with notification of the change at a time sufficiently prior to the effective date of the change to allow the employer an opportunity to make the necessary adjustments and with a copy of the notification of the change which has been sent to all concerned employees.

(d)  The governing board shall not require the completion of a new deduction authorization when a dues or other change has been effected or at any other time without the express approval of the concerned employee organization.

(e)  The governing board shall honor the terms of the employee's written authorization for payroll deductions. Employee requests to cancel or change authorizations for payroll deductions for employee organizations shall be directed to the employee organization rather than to the governing board. The employee organization shall be responsible for processing these requests. The governing board shall rely on information provided by the employee organization regarding whether deductions for an employee organization were properly canceled or changed, and the employee organization shall indemnify the district for any claims made by the employee for deductions made in reliance on that information.

(f)  A certified or recognized employee organization that certifies that it has and will maintain individual employee authorizations shall not be required to submit to the governing board of a community college district a copy of the employee's written authorization in order for the payroll deductions described in this section to be effective, unless a dispute arises about the existence or terms of the written authorization. The employee organization shall indemnify the district for any claims made by the employee for deductions made in reliance on its notification.

SEC. 4.   Section 88167 of the Education Code is amended to read:

88167.  (a) (1) Except as provided in subdivision (b), the governing board of each community college district, when drawing an order for the salary or wage payment due to a classified employee of the community college district, may, without charge, reduce the order by the amount that it has been requested in a revocable written authorization by an employee who is a member of the bargaining unit to deduct for the payment of dues in, or for any other service provided by, any employee organization or bona fide association, whose membership consists, in whole or in part, of employees of that community college district, and that has, as one of its objectives, improvements in the terms or conditions of employment for the

advancement of the welfare of those employees. Any revocation of a written authorization shall be in writing and shall be effective provided the revocation complies with the terms of the written authorization.

(2) The revocable written authorization shall remain in effect until expressly revoked in writing by the employee in accordance with the terms of the authorization. Whenever there is an increase in the amount required for the payment to the employee organization, the employee organization shall provide the employee with adequate and necessary data on the increase at a time sufficiently before the effective date of the increase to allow the employee an opportunity to revoke the written authorization, if desired and if permitted by the authorization. The employee organization shall provide the community college district with notification of the increase at a time sufficiently before the effective date of the increase to allow the employer an opportunity to make the necessary changes and with a copy of the notification of the increase that has been sent to all concerned employees.

(3) Upon receipt of a properly signed authorization for payroll deductions by a classified employee pursuant to this section, the governing board shall reduce the employee's pay warrant by the designated amount in the next pay period following the closing date for receipt of changes in pay warrants.

(4) The governing board, on the same designated date of each month, shall draw its order upon the funds of the community college district in favor of the employee organization designated by the employee for an amount equal to the total of the respective deductions made with respect to the employee organization during the pay period.

(5) The governing board shall not require the completion of a new deduction authorization when a dues increase has been effected or at any other time without the express approval of the concerned employee organization.

(6) The governing board shall honor the terms of the employee's written authorization for payroll deductions. Employee requests to cancel or change authorizations for payroll deductions for employee organizations shall be directed to the employee organization rather than to the governing board. The employee organization shall be responsible for processing such requests. The governing board shall rely on the information provided by the employee organization to cancel or change authorizations, and the employee organization shall indemnify the governing board for any claims made by the employee for deductions made in reliance on that information.

(7) A classified or recognized employee organization that certifies that it has and will maintain individual employee authorizations shall not be required to submit to the governing board a copy of the employee's written authorization in order for the payroll deductions described in this section to be effective, unless a dispute arises about the existence or terms of the written authorization. The employee organization shall indemnify the governing board for any claims made by the employee for deductions made in reliance on its notification.

(b) The governing board of each community college district, when drawing an order for the salary or wage payment due to a classified employee

of the community college district may, without charge, reduce the order for the payment of dues to, or for any other service provided by, the certified or recognized organization of which the classified employee is a member, or for the payment of service fees to the certified or recognized employee organization as required in an organizational security arrangement between the exclusive representative and a community college district employer as provided under Chapter 10.7 (commencing with Section 3540) of Division 4 of Title 1 of the Government Code. However, the organizational security arrangement shall provide that any employee may pay service fees directly to the certified or recognized employee organization in lieu of having the service fees deducted from the salary or wage order.

(c) This section shall apply to community college districts that have adopted the merit system in the same manner and effect as if it were a part of Article 3 (commencing with Section 88060).

SEC. 5.   Section 1150 of the Government Code is amended to read:

1150.   As used in this article:

(a) "State employee" means all persons who receive wages for services through the uniform payroll system established and administered by the Controller under Section 12470.

(b) "Public agency" includes counties, cities, municipal corporations, political subdivisions, public districts, and other public agencies of the state.

(c) "Employee organization" means an organization which represents employees of a public employer and that has been recognized or certified by the public employer or the Public Employment Relations Board as the exclusive representative of the employees.

(d) "Bona fide association" means an organization of employees and former employees of an agency of the state and the California State University, and which does not have as one of its purposes representing these employees in their employer-employee relations.

(e) "Deduction" does not include direct deposit by electronic fund transfer, as authorized by Sections 7506 and 12480.

(f) (1) "Public employer" means the state, the Regents of the University of California, the Trustees of the California State University and the California State University, the Judicial Council, a trial court, a county, city, district, public authority, including transit district, public agency, or any other political subdivision or public corporation of the state, except as provided in paragraph (2).

(2) A public school employer or community college district is not a public employer for purposes of transmittal of payroll deductions to professional organizations or employee organizations. These entities shall be governed by Sections 45060, 45168, 87833, and 88167 of the Education Code, as may be applicable.

SEC. 6.   Section 1152 of the Government Code is amended to read:

1152.   Deductions may be requested by employee organizations and bona fide associations from the salaries and wages of their members, and public employers shall honor these requests, as follows:

(a)   Employee organizations may request membership dues, initiation fees, and general assessments, as well as payment of any other membership benefit program sponsored by the organization.

(b)   Bona fide associations may request membership dues and initiation fees.

The Controller shall not be required to make any benefit deductions for an employee member whose membership dues are not deducted.

SEC. 7.   Section 1153 of the Government Code is amended to read:

1153.   The Controller shall provide for the administration of payroll deductions as set forth in Sections 1151, 1151.5, and 1152, salary reductions pursuant to Section 12420.2, and may establish, by rule or regulation, procedures for that purpose.

In administering these programs the Controller shall:

(a)   Make, cancel, or change a deduction or reduction at the request of the person or organization authorized to receive the deduction or reduction. All requests shall be made on forms approved by the Controller.

(b)   Obtain a certification from any state agency, employee organization, or business entity requesting a deduction or reduction that they have and will maintain an authorization, signed by the individual from whose salary or wages the deduction or reduction is to be made. An employee organization that certifies that it has and will maintain individual employee authorizations shall not be required to provide a copy of an individual authorization to the Controller unless a dispute arises about the existence or terms of the authorization.

(c)   Provide for an agreement from individuals, organizations, and business entities receiving services to relieve the state, its officers and employees, of any liability that may result from making, canceling, or changing requested deductions or reductions. However, no financial institution receiving a payroll service pursuant to this section shall be required to reimburse the state for any error in the payroll service received by that financial institution after 90 days from the month in which the payroll service was deducted from an individual's paycheck.

(d)   Determine the cost of performing the requested service and collect that cost from the organization, entity, or individual requesting or authorizing the service. Services requested which are incidental, but not necessary, to making the deduction may be performed at the Controller's discretion with any additional cost to be paid by the requester. At least 30 days prior to implementation of any adjustment of employee costs pursuant to Section 12420.2, the Controller shall notify in writing any affected employee organization.

(e)   Prior to making a deduction for an employee organization or a bona fide association, determine that the organization or association has been recognized, certified, or registered by the appropriate authority.

(f)   Decline to make a deduction for any individual, organization, or entity if the Controller determines that it is not administratively feasible or practical to make the deduction or if the Controller determines that the individual, organization, or entity requesting or receiving the deduction has failed to

— 18 —

comply with any statute, rule, regulation, or procedure for the administration of deductions.

(g)  After receiving notification from an employee organization that it possesses a written authorization for deduction, commence the first deduction in the next pay period after the Controller receives the notification. The employee organization shall indemnify the Controller for any claims made by the employee for deductions made in reliance on that notification.

(h)  Make, cancel, or change a deduction or reduction not later than the month subsequent to the month in which the request is received, except that a deduction for an employee organization may be revoked only pursuant to the terms of the employee's written authorization. Employee requests to cancel or change deductions for employee organizations shall be directed to the employee organization, rather than to the Controller. The employee organization shall be responsible for processing these requests. The Controller shall rely on information provided by the employee organization regarding whether deductions for an employee organization were properly canceled or changed, and the employee organization shall indemnify the Controller for any claims made by the employee for deductions made in reliance on that information. Except as provided in subdivision (c), all cancellations or changes shall be effective when made by the Controller.

(i)  At the request of a state agency, transfer employee deduction authorization for a state-sponsored benefit program from one provider to another if the benefit and the employee contribution remain substantially the same. Notice of the transfer shall be given by the Controller to all affected employees.

SEC. 8.  Section 1157.3 of the Government Code is amended to read:

1157.3.  (a) Employees, including retired employees, of a public employer in addition to any other purposes authorized in this article, may also authorize deductions to be made from their salaries, wages, or retirement allowances for the payment of dues in, or for any other service, program, or committee provided or sponsored by, any employee organization or bona fide association whose membership is comprised, in whole or in part, of employees of the public employer and employees of such organization and which has as one of its objectives improvements in the terms or conditions of employment for the advancement of the welfare of the employees.

(b)  The public employer shall honor employee authorizations for the deductions described in subdivision (a). The revocability of an authorization shall be determined by the terms of the authorization.

SEC. 9.  Section 1157.10 of the Government Code is amended to read:

1157.10.  Payroll deductions for state employees of public agencies, other than those under the uniform payroll system, shall be administered by the appropriate officer of the public agency. In administering payroll deductions the officer shall do all of the following:

(a)  Make, cancel, or change a deduction at the request of the person or organization authorized to receive the deduction. All requests shall be on forms approved by the public agency.

(b)  Obtain a certification from any state agency, employee organization, or business entity requesting a deduction that they have, and will maintain, an authorization to make the deduction, signed by the individual from whose salary or wages the deduction is to be made. An employee organization that certifies that it has and will maintain individual employee authorizations shall not be required to provide a copy of an individual authorization to the public agency unless a dispute arises about the existence or terms of the authorization.

(c)  Provide for an agreement from organizations and business entities receiving deductions to relieve the public agency, its officers and employees, of any liability that may result from making, canceling, or changing requested deductions.

(d)  Determine the cost of performing the requested deduction service and collect that cost from the organization, entity, or individual requesting or authorizing the deduction. Services requested which are incidental, but not necessary, to making the deduction may be performed at the public agency's discretion, with any additional cost to be paid by the requester.

(e)  Prior to making a deduction for an employee organization or a bona fide association, determine that the organization or association has been recognized or registered by the appropriate authority.

(f)  Decline to make deductions for any individual, organization, or entity if the public agency determines that it is not administratively feasible or practical to make the deduction.

(g)  Make, cancel, or change a deduction not later than the month subsequent to the month in which the request is received, except that a deduction for an employee organization can be revoked only pursuant to the terms of the employee's written authorization. Employee requests to cancel or change deductions for employee organizations shall be directed to the employee organization, rather than to the public agency. The employee organization shall be responsible for processing these requests. The public agency shall rely on information provided by the employee organization regarding whether deductions for an employee organization were properly canceled or changed, and the employee organization shall indemnify the public agency for any claims made by the employee for deductions made in reliance on that information. All deductions, cancellations, or changes shall be effective when made by the public agency.

SEC. 10.  Section 1157.12 is added to the Government Code, to read:

1157.12.  Public employers other than the state that provide for the administration of payroll deductions authorized by employees for employee organizations as set forth in Sections 1152 and 1157.3 or pursuant to other public employee labor relations statutes, shall:

(a)  Rely on a certification from any employee organization requesting a deduction or reduction that they have and will maintain an authorization, signed by the individual from whose salary or wages the deduction or reduction is to be made. An employee organization that certifies that it has and will maintain individual employee authorizations shall not be required to provide a copy of an individual authorization to the public employer

unless a dispute arises about the existence or terms of the authorization. The employee organization shall indemnify the public employer for any claims made by the employee for deductions made in reliance on that certification.

(b)  Direct employee requests to cancel or change deductions for employee organizations to the employee organization, rather than to the public employer. The public employer shall rely on information provided by the employee organization regarding whether deductions for an employee organization were properly canceled or changed, and the employee organization shall indemnify the public employer for any claims made by the employee for deductions made in reliance on that information. Deductions may be revoked only pursuant to the terms of the employee's written authorization.

SEC. 11.   Section 3550 of the Government Code is amended to read:

3550.   A public employer shall not deter or discourage public employees or applicants to be public employees from becoming or remaining members of an employee organization, or from authorizing representation by an employee organization, or from authorizing dues or fee deductions to an employee organization. This is declaratory of existing law.

SEC. 12.   Section 3551 of the Government Code is amended to read:

3551.   (a)  Except as provided in paragraphs (b) and (c), the Public Employment Relations Board shall have jurisdiction over violations of this chapter. The powers and duties of the board described in Section 3541.3 shall apply, as appropriate, to this chapter.

(b)  For a public transit agency, the provisions in the Public Utilities Code that regulate labor relations shall govern violations of this chapter.

(c)  The employee relations commissions established by the County of Los Angeles and the City of Los Angeles shall have jurisdiction over violations of this chapter in the County of Los Angeles and the City of Los Angeles, respectively.

SEC. 13.   Section 3552 of the Government Code is amended to read:

3552.   For the purpose of this chapter:

(a)  "Employee organization" means an employee organization within the meaning of the provisions listed in subdivision (c).

(b)  "Public employee" means an employee granted rights by the provisions listed in subdivision (c) or an employee of a public transit agency, the labor relations of which are regulated by provisions in the Public Utilities Code.

(c)  "Public employer" means any employer subject to Chapter 10 (commencing with Section 3500), Chapter 10.3 (commencing with Section 3512), Chapter 10.4 (commencing with Section 3524.50), Chapter 10.7 (commencing with Section 3540), or Chapter 12 (commencing with Section 3560) of Division 4 of Title 1, Chapter 7 (commencing with Section 71600) or Chapter 7.5 (commencing with Section 71800) of Title 8 of this code, or Chapter 7 (commencing with Section 99560) of Part 11 of Division 10 of the Public Utilities Code, or Section 12302.25 of the Welfare and Institutions Code. This chapter also applies to public transit districts with respect to

their public employees who are in bargaining units not subject to the provisions listed in this subdivision.

SEC. 14.   Section 3553 is added to the Government Code, to read:

3553.  (a)  This section shall apply only when an employee organization has been recognized or certified by the governing body of the public employer or the Public Employment Relations Board as the exclusive representative of employees in a bargaining unit.

(b)  If a public employer chooses to disseminate mass communications to public employees or applicants to be public employees concerning public employees' rights to join or support an employee organization, or to refrain from joining or supporting an employee organization, it shall meet and confer with the exclusive representative concerning the content of the mass communication.

(c)  If the public employer and the exclusive representative do not come to agreement on the content of a public employer's mass communication covered by this section, and if the public employer still chooses to disseminate the mass communication, the public employer shall distribute to the public employees, in addition to, and at the same time as, its own mass communication, a communication of reasonable length provided to the public employer by the exclusive representative. The exclusive representative shall provide the public employer with adequate copies of its own mass communication prior to distribution.

(d)  This section shall not apply to a public employer's distribution of a communication concerning public employee rights that has been adopted for purposes of this section by the Public Employment Relations Board or the Department of Human Resources.

(e)  For purposes of this section, a "mass communication," means a written document, or script for an oral or recorded presentation or message, that is intended for delivery to multiple public employees.

SEC. 15.   Section 3555.5 of the Government Code is amended to read:

3555.5.  (a)  This chapter applies to public employers subject to Chapter 10 (commencing with Section 3500), Chapter 10.3 (commencing with Section 3512), Chapter 10.4 (commencing with Section 3524.50), Chapter 10.7 (commencing with Section 3540), or Chapter 12 (commencing with Section 3560) of, or Chapter 7 (commencing with Section 71600) or Chapter 7.5 (commencing with Section 71800) of Title 8 of, this code, or Chapter 7 (commencing with Section 99560) of Part 11 of Division 10 of the Public Utilities Code. This chapter, except for subdivision (c), also applies to public transit districts with respect to their public employees who are in bargaining units not subject to the provisions listed in this subdivision.

(b)  For purposes of this chapter:

(1)  "Exclusive representative" means the exclusive representative or recognized employee organization for the bargaining unit.

(2)  "Interest arbitration" means a process whereby an employer and an exclusive representative submit a dispute concerning the terms of access to new employee orientations for resolution to a third-party arbitrator who is then authorized to approve either party's proposal in its entirety, to approve

a proposal using both the employer's and exclusive representative's final proposals, or to modify the proposals by the parties.

(3) "New employee orientation" means the onboarding process of a newly hired public employee, whether in person, online, or through other means or mediums, in which employees are advised of their employment status, rights, benefits, duties and responsibilities, or any other employment-related matters.

(4) "Newly hired public employee" means any employee, whether permanent, temporary, full time, part time, or seasonal, hired by a public employer, to which this chapter applies and who is still employed as of the date of the new employee orientation.

(c) (1) Except as provided in paragraph (2), the Public Employment Relations Board shall have jurisdiction over violations of this chapter. The powers and duties of the board described in Section 3541.3 shall apply, as appropriate, to this chapter.

(2) The employee relations commissions established by the County of Los Angeles and the City of Los Angeles shall have jurisdiction over violations of this chapter in the County of Los Angeles and the City of Los Angeles, respectively.

SEC. 16.   Section 3556 of the Government Code is amended to read:

3556.   Each public employer described in subdivision (a) of Section 3555.5 shall provide the exclusive representative mandatory access to its new employee orientations. The exclusive representative shall receive not less than 10 days' notice in advance of an orientation, except that a shorter notice may be provided in a specific instance where there is an urgent need critical to the employer's operations that was not reasonably foreseeable. The structure, time, and manner of exclusive representative access shall be determined through mutual agreement between the employer and the exclusive representative, subject to the requirements of Section 3557. The date, time, and place of the orientation shall not be disclosed to anyone other than the employees, the exclusive representative, or a vendor that is contracted to provide a service for purposes of the orientation.

SEC. 17.   Section 18502 of the Government Code is amended to read:

18502.   (a)   There is hereby created in state government the Department of Human Resources. The department succeeds to and is vested with the following:

(1) All of the powers and duties exercised and performed by the Department of Personnel Administration.

(2) Those powers, duties, and authorities necessary to operate the state civil service system pursuant to Article VII of the California Constitution, this code, the merit principle, and applicable rules duly adopted by the State Personnel Board.

(b) The State Personnel Board shall prescribe rules consistent with a merit based civil service system to govern appointments, classification, examinations, probationary periods, disciplinary actions, and other matters related to the board's authority under Article VII of the California Constitution. The State Personnel Board may conduct audits and

investigations of personnel practices of the department and appointing authorities to ensure compliance with civil service policies, procedures, and statutes.

(c)  This section shall not limit the authority of the Department of Human Resources and the State Personnel Board to delegate, share, or transfer between them responsibilities for programs within their respective jurisdictions pursuant to an agreement.

(d)  The rules and regulations of the State Personnel Board and of the Department of Personnel Administration shall remain in effect unless and until contradicted by the terms of this chapter or amended or repealed by the board or the Department of Human Resources.

SEC. 18.   Section 18525.3 of the Government Code is amended to read:

18525.3.  "Transfer" means both of the following:

(a)  The appointment of an employee to another position in the same class but under another appointing power.

(b)  The appointment of an employee to a different class to which the employee satisfies the minimum qualifications and that has substantially the same level of duties, responsibility, and salary as determined by board rule.

SEC. 19.   Section 18528 of the Government Code is amended to read:

18528.  "Permanent employee" means an employee who has permanent status. "Permanent status" means the status of an employee who is lawfully retained in his or her position after the successful completion of the probationary period. "Permanent status" also means an employee who is lawfully appointed to his or her position after successful completion of the job examination period under the Limited Examination and Appointment Program.

SEC. 20.   Section 18577 of the Government Code is amended to read:

18577.  Whenever this part refers to "board rules," "rules of the board," "rules," or makes a similar reference, that reference authorizes the board to make rules concerning the subject matter for which that reference is made.

SEC. 21.   Section 18939 of the Government Code is amended to read:

18939.  The department or a designated appointing power may receive applications, conduct examinations, and create eligible lists on a continual basis consistent with board rules. The names of eligibles who took the same or a comparable examination on different dates may be ranked for purposes of certification in the order of final earned ratings, except as the order may be modified by the application of veterans preferences or career credits, consistent with applicable statutes. Eligibility from a continuous examination may be deemed to be established as of the date of examination.

SEC. 22.   Section 18950 of the Government Code is amended to read:

18950.  (a)  Vacancies in positions shall be filled insofar as consistent with the best interests of the state from among employees holding positions in appropriate classes, and appropriate promotional lists shall be established to facilitate this purpose, except as provided in Section 18930. Examinations shall be held on an open, nonpromotional basis when, in the judgment of the department or designated appointing power, open competition will

produce eligible lists with more highly skilled qualified candidates and is consistent with the best interests of the state.

(b)  Consistent with board rules, the department may prescribe conditions under which state employees, persons on leave of absence, and persons whose names are on appropriate reemployment lists, may be permitted to compete in promotional examination and to attain eligibility for appointment.

(c)  The department, consistent with board rules, may prescribe conditions under which eligibility may be transferred from one promotional list to another promotional list.

(d)  Notwithstanding subdivision (c), eligibility may not be transferred from one promotional list to another promotional list where the list to which eligibility has been transferred is for a classification requiring specific professional licensing unless the applicant possesses the appropriate license.

SEC. 23.   Section 19050.4 of the Government Code is amended to read:

19050.4.   A transfer may be accomplished without examination pursuant to board rules.

SEC. 24.   Section 19051 of the Government Code is repealed.

SEC. 25.   Section 19051 is added to the Government Code, to read:

19051.   Civil service appointments shall only be made to a class that is appropriate for the duties, functions, and responsibilities that will be performed.

SEC. 26.   Section 19054.1 of the Government Code is amended to read:

19054.1.   When an examination for a managerial position is conducted on an open and promotional basis, the names of eligibles shall be placed on one list and ranked in relative order of the examination scores received.

SEC. 27.   Section 19057.1 of the Government Code is amended to read:

19057.1.   (a)  Except for reemployment lists and State Restriction of Appointment lists, when an appointing power seeks to fill a vacant position by using an employment list, the department shall provide the appointing power with a certified list of the names and addresses of all eligible candidates whose scores at the time of certification represent the three highest ranks on the list and who have indicated a willingness to accept appointment under the conditions of employment specified. Where there is more than one employment list or Limited Examination and Appointment Program referral list, the department shall, pursuant to applicable law and board rules, provide a single certified list of eligibles that combines the names and addresses of all eligible candidates.

(b)  For purposes of ranking, scores of eligibles on employment lists covered by this section shall be rounded to the nearest whole percent. A rank shall consist of one or more eligibles with the same whole percentage score.

If the names on the list from which certification is being made represent fewer than three ranks, then, consistent with board rules, additional eligibles may be certified from the various lists next lower in order of preference until names from three ranks appear. If there are fewer than three names available for certification, and the appointing authority does not choose to appoint from among these, the appointing authority may demand certification

of three names. In that case, examinations shall be conducted until at least three names may be certified by the procedure described in this section, and the appointing authority shall fill the position by appointment of one of the persons certified.

(c) Fractional examination scores shall be provided to, and used by, the Department of the California Highway Patrol for its peace officer classes.

(d) The department may, consistent with board rules, provide for certifying more or less than three ranks where the size of the certified group is disproportionate to the number of vacancies.

SEC. 28.   Section 19057.3 of the Government Code is amended to read:

19057.3.   (a) For a position in the Department of Corrections and Rehabilitation, there shall be certified to the appointing power the names and addresses of all those eligibles for peace officer and closely allied classes whose scores, at the time of certification, represent the three highest ranks on the employment list for the class in which the position belongs and who have indicated their willingness to accept appointment under the conditions of employment specified.

(b) For purposes of ranking, scores of eligibles on employment lists for the classes shall be rounded to the nearest whole percent. A rank consists of one or more eligibles with the same whole percentage score.

(c) If fewer than three ranks of persons willing to accept appointment are on the list from which certification is to be made, then additional eligibles shall be certified from the various lists next lower in order of preference until names from three ranks are certified. If there are fewer than three names on those lists, and the appointing power does not choose to appoint from among these, the appointing power may demand certification of three names and examinations shall be conducted until at least three names may be certified. The appointing power shall fill the position by the appointment of one of the persons certified.

(d) Where there is more than one employment list or Limited Examination and Appointment Program referral list, the department may, pursuant to applicable law and board rules, provide a single certified list of eligibles that combines the names and addresses of all eligible candidates.

(e) The department may, consistent with board rules, provide for certifying more or less than three ranks where the size of the certified group is disproportionate to the number of vacancies.

(f) The department may, consistent with board rules, allow for the names of eligibles to be transferred from lists for the same class or comparable classes where names from one list were certified under the rule of three ranks, and names from the other list were certified under the rule of three names.

SEC. 29.   Section 19243 of the Government Code is amended to read:

19243.   Upon successful completion of the job examination period, the candidate shall have qualified in the examination. The appointing power shall appoint the candidate, without further examination, to an appropriate position where permanent status may accumulate. A candidate appointed in this way is not required to serve a probationary period.

SEC. 30.  Section 19816.18 of the Government Code is amended to read:

19816.18.  (a)  The department may either self-fund or self-insure any benefit program under its administration when it is cost-effective to do so. The department may administer the self-funded or self-insured benefit program directly or may contract with a third party administrator. The Treasurer, Controller, and the Department of Finance shall assist the department to ensure that the appropriate fiscal and administrative procedures are established. These procedures shall include, but not be limited to, processes, fund accounts, and transfers from each department's operating budget, including a pro rata share of the cost of administration. Notwithstanding any other law, the Public Employees' Retirement System shall assist the department upon request by providing retiree names and addresses to the department solely for the purpose of notifying those retirees of eligibility for enrollment into a dental plan, vision plan, group legal insurance plan, or life insurance plan offered by the department. Any information provided to the department shall be treated as confidential by the department.

(b)  Funds appropriated for self-funded or self-insured benefit programs established pursuant to this section shall be maintained in the State Employees' Self-Funded Benefit Fund, which is hereby created in the State Treasury. Moneys in this fund shall be used by the department to make benefit payments and pay related administrative costs. Income of whatever nature earned on the moneys in the State Employees' Self-Funded Benefit Fund during any fiscal year shall be credited to the fund. The Controller and the Department of Finance may establish individual accounts within the fund, as deemed appropriate, for individual self-funded or self-insured benefit programs. Notwithstanding Section 13340, moneys in this fund and accounts within the fund that are used to pay benefits for a self-funded or self-insured program established pursuant to this section are continuously appropriated, without regard to fiscal years.

SEC. 31.  Section 19827.2 of the Government Code is amended to read:

19827.2.  (a)  The Legislature, having recognized December 1980 statistics from the U.S. Department of Labor, finds: that 60 percent of all women 18 to 64 are in the workforce, that two-thirds of all those women are either the head of a household or had husbands whose earnings were less than ten thousand dollars ($10,000), and that most women are in the workforce because of economic need; that the average working woman has earned less than the average working man, not only because of the lack of educational and employment opportunities in the past, but because of segregation into historically undervalued occupations where wages have been depressed; and that a failure to reassess the basis on which salaries in state service are established will perpetuate these pay inequities, which have a particularly discriminatory impact on minority and older women; and, therefore, it is the intent of the Legislature in enacting this statute to establish a state policy of setting salaries on the basis of comparability of the value of the work for jobs that employ a higher proportion of females than males.

(b) The department shall review and analyze existing information, including studies from other jurisdictions that are relevant to setting salaries for jobs that employ a higher proportion of females than males. This information shall be provided on an annual basis to the appropriate policy committee of the Legislature and to the parties meeting and conferring pursuant to Section 3517.

(c) For the purpose of implementing this section, the following definitions apply:

(1) "Salary" means, except as otherwise provided in Section 18539.5, the amount of money or credit received as compensation for service rendered, exclusive of mileage, traveling allowances, and other sums received for actual and necessary expenses incurred in the performance of the state's business, but including the reasonable value of board, rent, housing, lodging, or similar advantages received from the state.

(2) "Comparability of the value of the work" means the value of the work performed by an employee, or group of employees within a class or salary range, in relation to the value of the work of another employee, or group of employees, to any class or salary range within state service.

(3) "Skill" means the skill required in the performance of the work, including any type of intellectual or physical skill acquired by the employee through experience, training, education, or natural ability.

(4) "Effort" means the effort required in the performance of the work, including any intellectual or physical effort.

(5) "Responsibility" means the responsibility required in the performance of the work, including the extent to which the employer relies on the employee to perform the work, the importance of the duties, and the accountability of the employee for the work of others and for resources.

(6) "Working conditions" means the conditions under which the work of an employee is performed, including physical or psychological factors.

(d) If the provisions of this section are in conflict with the provisions of a memorandum of understanding reached pursuant to Section 3517.5, the memorandum of understanding shall be controlling without further legislative action, except that if the provisions of a memorandum of understanding require the expenditure of funds, the provisions shall not become effective unless approved by the Legislature in the annual Budget Act.

SEC. 32. Section 19995.1.5 is added to the Government Code, to read:

19995.1.5. (a) The department may provide training programs to any public employee or officer so that the quality of service rendered by those persons may be continually improved. For purposes of this subdivision, "public employee or officer" means any employee or officer of any of the following:

(1) The state, regardless of whether the employee or officer is subject to state civil service.

(2) A city.

(3) A county.

(4) A special district, or any other political subdivision of the state.

(5) The California State University.

(6) The University of California.

(7) The Legislature.

(8) The judicial branch.

(9) The federal government.

(b) The department may give priority registration for enrollment in training programs described in subdivision (a) to state employees and officers.

(c) The department, at its discretion, may exclude any public employee or officer from a training program described in subdivision (a) based on the appropriateness of the subject matter for those public employees or officers.

(d) Notwithstanding Section 18707, the department may collect registration fees from the employee's or officer's employing entity for attendance in a training program described in subdivision (a) without entering into a written agreement with that employing entity or seeking the approval of the Department of General Services.

SEC. 33.   Section 19995.5 of the Government Code, as added by Section 5 of Chapter 630 of the Statutes of 1999, is repealed.

SEC. 34.   Section 22944.5 of the Government Code is amended to read:

22944.5.   (a)  (1)  The state and employees in State Bargaining Unit 2, 7, 8, 9, 10, 13, 18, or 19 shall prefund retiree health care, with the goal of reaching a 50-percent cost sharing of actuarially determined normal costs for both employer and employees by July 1, 2019.

(2)  The state and employees in State Bargaining Units 6 and 16 shall prefund retiree health care, with the goal of reaching a 50-percent cost sharing of actuarially determined normal costs for both employer and employees by July 1, 2018.

(3)  The state and employees in the judicial branch shall prefund retiree health care, with the goal of reaching a 50-percent cost sharing of actuarially determined normal costs for both employer and employees by July 1, 2017.

(4)  The state and employees in State Bargaining Unit 1, 3, 4, 11, 12, 14, 15, 17, 20, or 21 shall prefund retiree health care, with the goal of reaching a 50-percent cost sharing of actuarially determined normal costs for both employer and employees by July 1, 2020.

(b)  (1)  The employees in State Bargaining Unit 9 shall make contributions to prefund retiree health care based on the following schedule, and the state shall make a matching contribution:

(A)  Effective July 1, 2017, 0.5 percent of pensionable compensation.

(B)  Effective July 1, 2018, an additional 0.5 percent for a total employee contribution of 1.0 percent of pensionable compensation.

(C)  Effective July 1, 2019, an additional 1.0 percent for a total employee contribution of 2.0 percent of pensionable compensation.

(2)  The employees in State Bargaining Unit 10 shall make contributions to prefund retiree health care based on the following schedule, and the state shall make a matching contribution:

(A)  Effective July 1, 2017, 0.7 percent of pensionable compensation.

(B)  Effective July 1, 2018, an additional 0.7 percent for a total employee contribution of 1.4 percent of pensionable compensation.

(C)  Effective July 1, 2019, an additional 1.4 percent for a total employee contribution of 2.8 percent of pensionable compensation.

(3)  The employees in State Bargaining Unit 6 shall make contributions to prefund retiree health care based on the following schedule, and the state shall make a matching contribution:

(A)  Effective July 1, 2016, 1.3 percent of pensionable compensation.

(B)  Effective July 1, 2017, an additional 1.3 percent for a total employee contribution of 2.6 percent of pensionable compensation.

(C)  Effective July 1, 2018, an additional 1.4 percent for a total employee contribution of 4.0 percent of pensionable compensation.

(4)  The state employees in the judicial branch shall make contributions to prefund retiree health care based on the following schedule, and the state shall make a matching contribution:

(A)  Effective July 1, 2016, 1.5 percent of pensionable compensation.

(B)  Effective July 1, 2017, up to an additional 1.5 percent for a total employee contribution of up to 3.0 percent of pensionable compensation. The additional amount shall be determined by the Director of Finance no later than April 1, 2017, based on the actuarially determined normal costs identified in the state valuation.

(C)  This paragraph does not apply to a judge who is subject to Chapter 11 (commencing with Section 75000) or Chapter 11.5 (commencing with Section 75500) of Title 8.

(5)  The employees in State Bargaining Unit 12 shall make contributions to prefund retiree health care based on the following schedule, and the state shall make a matching contribution:

(A)  Effective July 1, 2017, 1.5 percent of pensionable compensation.

(B)  Effective July 1, 2018, an additional 1.0 percent for a total employee contribution of 2.5 percent of pensionable compensation.

(C)  Effective July 1, 2019, an additional 1.0 percent for a total employee contribution of 3.5 percent of pensionable compensation.

(D)  Effective July 1, 2020, an additional 1.1 percent for a total employee contribution of 4.6 percent of pensionable compensation.

(6)  The employees in State Bargaining Unit 2 shall make contributions to prefund retiree health care based on the following schedule, and the state shall make a matching contribution:

(A)  Effective July 1, 2017, 0.7 percent of pensionable compensation.

(B)  Effective July 1, 2018, an additional 0.6 percent for a total employee contribution of 1.3 percent of pensionable compensation.

(C)  Effective July 1, 2019, an additional 0.7 percent for a total employee contribution of 2.0 percent of pensionable compensation.

(7)  The employees in State Bargaining Unit 7 shall make contributions to prefund retiree health care based on the following schedule, and the state shall make a matching contribution:

(A)  Effective July 1, 2017, 1.3 percent of pensionable compensation.

(B)  Effective July 1, 2018, an additional 1.4 percent for a total employee contribution of 2.7 percent of pensionable compensation.

(C)  Effective July 1, 2019, an additional 1.3 percent for a total employee contribution of 4.0 percent of pensionable compensation.

(8)  The employees in State Bargaining Unit 1, 3, 4, 11, 14, 15, 17, 20, or 21 shall make contributions to prefund retiree health care based on the following schedule, and the state shall make a matching contribution:

(A)  Effective July 1, 2018, 1.2 percent of pensionable compensation.

(B)  Effective July 1, 2019, an additional 1.1 percent for a total employee contribution of 2.3 percent of pensionable compensation.

(C)  Effective July 1, 2020, an additional 1.2 percent for a total employee contribution of 3.5 percent of pensionable compensation.

(9)  The employees in State Bargaining Unit 8 shall make contributions to prefund retiree health care based on the following schedule, and the state shall make a matching contribution:

(A)  Effective July 1, 2017, 1.5 percent of pensionable compensation.

(B)  Effective July 1, 2018, an additional 1.5 percent for a total employee contribution of 3.0 percent of pensionable compensation.

(C)  Effective July 1, 2019, an additional 1.4 percent for a total employee contribution of 4.4 percent of pensionable compensation.

(10)  The employees in State Bargaining Unit 13 shall make contributions to prefund retiree health care based on the following schedule, and the state shall make a matching contribution:

(A)  Effective July 1, 2017, 1.3 percent of pensionable compensation.

(B)  Effective July 1, 2018, an additional 1.3 percent for a total employee contribution of 2.6 percent of pensionable compensation.

(C)  Effective July 1, 2019, an additional 1.3 percent for a total employee contribution of 3.9 percent of pensionable compensation.

(11)  The employees in State Bargaining Unit 18 shall make contributions to prefund retiree health care based on the following schedule, and the state shall make a matching contribution:

(A)  Effective July 1, 2017, 1.3 percent of pensionable compensation.

(B)  Effective July 1, 2018, an additional 1.3 percent for a total employee contribution of 2.6 percent of pensionable compensation.

(C)  Effective July 1, 2019, an additional 1.4 percent for a total employee contribution of 4.0 percent of pensionable compensation.

(12)  The employees in State Bargaining Unit 19 shall make contributions to prefund retiree health care based on the following schedule, and the state shall make a matching contribution:

(A)  Effective July 1, 2017, 1.0 percent of pensionable compensation.

(B)  Effective July 1, 2018, an additional 1.0 percent for a total employee contribution of 2.0 percent of pensionable compensation.

(C)  Effective July 1, 2019, an additional 1.0 percent for a total employee contribution of 3.0 percent of pensionable compensation.

(13)  The employees in State Bargaining Unit 16 shall make contributions to prefund retiree health care based on the following schedule, and the state shall make a matching contribution:

(A)  Effective July 1, 2017, 1 percent of pensionable compensation.

(B)  Effective July 1, 2018, an additional 0.4 percent for a total employee contribution of 1.4 percent of pensionable compensation.

(c)  This section only applies to employees who are eligible for health benefits, including permanent intermittent employees.

(d)  Contributions paid pursuant to this section shall be deposited in the Annuitants' Health Care Coverage Fund and shall not be refundable under any circumstances to an employee or his or her beneficiary or survivor.

(e)  If the provisions of this section are in conflict with the provisions of a memorandum of understanding reached pursuant to Section 3517.5, the memorandum of understanding shall be controlling without further legislative action, except that if those provisions of a memorandum of understanding require the expenditure of funds, the provisions shall not become effective unless approved by the Legislature in the annual Budget Act.

(f)  This section shall also apply to a state employee related to a bargaining unit described in subdivision (a) who is excepted from the definition of "state employee" in subdivision (c) of Section 3513.

(g)  (1)  With the goal of reaching a 50-percent cost sharing of actuarially determined normal costs for both employer and employees by July 1, 2020, the Director of the Department of Human Resources may establish the total employee contribution to prefund retiree health care as a percentage of pensionable compensation for the following:

(A)  A state employee who is not related to a bargaining unit described in subdivision (a) and who is excepted from the definition of "state employee" in subdivision (c) of Section 3513.

(B)  An officer or employee of the executive branch of state government who is not a member of the civil service.

(2)  An employee or officer to whom this subdivision applies shall make contributions to prefund retiree health care based on the percentages established in paragraph (1), and the state shall match the contributions.

SEC. 35.  Section 23725 of the Government Code is amended to read:

23725.  (a)  (1)  Notwithstanding any other provision of law, the charter of the County of San Diego may be amended as provided in Section 23720 to require that candidates for county office be elected at the general election. Only the candidates who receive the highest or second highest number of votes cast at the primary election shall appear on the ballot as candidates for county office at the ensuing general election. In the event there are two or less candidates for county office, the names of the candidates shall not appear on the primary election ballot and the candidate for county office with the highest number of votes cast shall be elected at the general election.

(2)  The amendments to paragraph (1) made by the act adding this paragraph shall be effective on and after January 1, 2018.

(b)  For purposes of this section, "county office" means any of the following offices:

(1)  County supervisor.

(2)  District attorney.

(3)  Sheriff.

(4)  Assessor, recorder, and county clerk.

(5) Treasurer and tax collector.

(6) Member of the county board of education.

SEC. 36. Section 31552.5 of the Government Code is amended to read:

31552.5. (a) Except as provided in subdivision (b), employees and officers of the Kern County Hospital Authority, a public agency that is a local unit of government established pursuant to Chapter 5.5 (commencing with Section 101852) of Part 4 of Division 101 of the Health and Safety Code, shall not automatically become members of the Kern County Employees' Retirement Association, but shall have their eligibility for membership in the Kern County Employees' Retirement Association be established pursuant to the provisions of that chapter.

(b) An employee who is hired by the authority on or after the operative date of the act adding this subdivision shall be a member of the Kern County Employees' Retirement Association as provided in subdivision (h) of Section 101853.1 of the Health and Safety Code.

SEC. 37. Section 71638 of the Government Code is amended to read:

71638. A trial court employee shall have the right to authorize, and the trial court employer shall honor, a dues deduction from his or her salary or wages as provided in Section 1152, 1153, 1157.1, 1157.2, 1157.3, 1157.4, 1157.5, or 1157.7.

SEC. 38. Section 71824 of the Government Code is amended to read:

71824. A court interpreter may authorize, and the trial court employer shall honor, a dues deduction from his or her salary or wages as provided in Section 1152, 1153, 1157.1, 1157.2, 1157.3, 1157.4, 1157.5, or 1157.7.

SEC. 39. Section 101853.1 of the Health and Safety Code is amended to read:

101853.1. (a) In exercising its powers to employ personnel, the authority shall implement, and the board of supervisors shall adopt, a personnel transition plan. The personnel transition plan shall require all of the following:

(1) Ongoing communication to employees and recognized employee organizations regarding the impact of the transition on existing medical center, county, and other health care facility employees and employee classifications.

(2) Meeting and conferring with representatives of affected bargaining unit employees on both of the following issues:

(A) A timeframe for which the transfer of personnel shall occur.

(B) Specified periods of time during which county or medical center employees affected by the establishment of the authority may elect to be considered for appointment and exercise reinstatement rights, if applicable, to funded, equivalent, vacant county positions for which they are qualified and eligible. An employee who first elects to remain with the county may subsequently seek reinstatement with the authority within 30 days of the election to remain with the county and shall be subject to the requirements of this article.

(3) Acknowledgment that the authority, to the extent permitted by federal and state law, and consistent with paragraph (3) of subdivision (d), shall be

96

bound by the terms of those memoranda of understanding executed between the county and its exclusive employee representatives that are in effect on the date of the transfer of control of the medical center to the authority. Subsequent memoranda of understanding with exclusive employee representatives shall be subject to approval only by the board of governors.

(4) Communication to the Board of Retirement of the Kern County Employees' Retirement Association or other retirement plan of any personnel transition plan, memoranda of understanding, or other arrangements that are related to the participation of the authority's employees or the addition of new employees in the retirement plan.

(b) Implementation of this chapter shall not be a cause for the modification of the medical center or county employment benefits. Employees of the medical center or county on the date of transfer, who become authority employees, shall retain their existing or equivalent classifications and job descriptions upon transfer to the authority, comparable pension benefits (if permissible pursuant to relevant plan terms), and their existing salaries and other benefits that include, but are not limited to, accrued and unused vacation, sick leave, personal leave, health care, retiree health benefits, and deferred compensation plans. The transfer of an employee from the medical center or county shall not constitute a termination of employment for purposes of Section 227.3 of the Labor Code, or employee benefit plans and arrangements maintained by the medical center or county, except as otherwise provided in the enabling ordinance or personnel transition plan, nor shall it be counted as a break in uninterrupted employment for purposes of Section 31641 of the Government Code with respect to the Kern County Employees' Retirement Association, or state service for purposes of the Public Employees' Retirement System (Part 3 (commencing with Section 20000) of Division 5 of Title 2 of the Government Code).

(c) Subject to applicable state law, the authority shall recognize the exclusive employee representatives of those authority employees who are transferred from the county or medical center to the authority pursuant to this chapter.

(d) In order to stabilize labor and employment relations and provide continuity of care and services to the people of the county, and notwithstanding any other law, the authority shall do all of the following for a period of 24 months after the effective date of the transfer of control of the medical center to the authority:

(1) Continue to recognize each exclusive employee representative of each bargaining unit.

(2) Continue to provide the same level of employee benefits to authority employees, whether the obligation to provide those benefits arises out of a memorandum of understanding, or other agreement or law.

(3) Extend and continue to be bound by any existing memoranda of understanding covering the terms and conditions of employment for employees of the authority, including the level of wages and benefits, and any county rules, ordinances, or policies specifically identified and

incorporated by reference in a memoranda of understanding for 24 months or through the term of the memorandum of understanding, whichever is longer, unless modified by mutual agreement with each of the exclusive employee representatives. The authority shall continue to provide those pension benefits specified in any memoranda of agreement as long as doing so does not conflict with any Kern County Employees' Retirement Association plan provisions, or federal or state law including the County Employees Retirement Law of 1937 (Chapter 3 (commencing with Section 31450) of Part 3 of Division 4 of Title 3 of the Government Code and the federal Internal Revenue Code). If a memoranda of understanding is expired on the date of the transfer of control of the medical center, then the authority shall continue to be bound by the terms and conditions of the most recent memoranda of understanding, unless modified by a mutual agreement with each of the exclusive employee representatives, and the benefits and wages of transferred employees shall be retained consistent with subdivision (b).

(4) Meet and confer with the exclusive employee representatives to develop processes and procedures to address employee disciplinary action taken against permanent employees. If the authority terminates, suspends, demotes, or reduces the pay of a permanent employee for disciplinary reasons, those actions shall only be for cause consistent with state law, and an employee shall be afforded applicable due process protections granted to public employees under state law. Permanent employees laid off by the authority within six months of the date of the transfer of control of the medical center shall remain on the county reemployment list for two years. Inclusion on the county reemployment list is not a guarantee of reemployment. For the purposes of this paragraph, the term "permanent employees" excludes probationary employees, temporary employees, seasonal employees, provisional employees, extra help employees, and per diem employees.

(5) To the extent layoffs occur, and provided that all other previously agreed upon factors are equal, ensure that seniority shall prevail. The authority shall meet and confer with the exclusive employee representatives to address layoff procedures and the manner in which, and the extent to which, seniority shall be measured for employees who transfer from the medical center or county.

(e) Permanent employees of the medical center or county on the effective date of the transfer of control of the medical center to the authority, shall be deemed qualified for employment in equivalent positions at the authority, and no other qualifications shall be required except as otherwise required by state or federal law. Probationary employees on the effective date of the transfer, as set forth in this paragraph, shall retain their probationary status and rights and shall not be required to serve a new probationary period or extend their probationary period by reason of the transfer. To the extent possible, employees who transfer to equivalent positions at the authority shall retain their existing classifications and job descriptions, but if there is a dispute over this issue, the authority agrees to meet and confer with the exclusive employee representatives of the transferred employees.

(f) Employees who transfer from the medical center or county to the authority shall retain the seniority they earned at the medical center or county and any benefits or privileges based on the seniority.

(g) Notwithstanding any other law, except as provided in subdivision (h), employees of the authority may participate in the Kern County Employees' Retirement Association, operated pursuant to the County Employees Retirement Law of 1937 (Chapter 3 (commencing with Section 31450) of Part 3 of Division 4 of Title 3 of the Government Code) as set forth below. However, the authority and employees of the authority, or certain designated parts thereof, shall not participate in the Kern County Employees' Retirement Association if the board of retirement, in its sole discretion, determines that their participation could jeopardize the Kern County Employees' Retirement Association's tax-qualified or governmental plan status under federal law, or if a contract or related contract amendment proposed by the authority contains any benefit provisions that are not specifically authorized by Chapters 3 (commencing with Section 31450) and 3.9 (commencing with Section 31899) of Part 3 of Division 4 of Title 3 of the Government Code or Article 4 (commencing with Section 7522) of Chapter 21 of Division 7 of Title 1 of the Government Code, and that the board determines would adversely affect the administration of the system. There shall not be any individual employee elections regarding participation in the Kern County Employees' Retirement Association or other retirement plans except to the extent such retirement plans provide for elective employee salary deferral contributions in accordance with federal Internal Revenue Code rules.

(1) Employees transferred from the county or medical center to the authority who are subject to a memorandum of understanding between the authority and an exclusive employee representative, as described in paragraphs (2) and (3) of subdivision (d), and who were members of the Kern County Employees' Retirement Association at the time of their transfer of employment, shall continue to be a member of the Kern County Employees' Retirement Association, retaining service credit earned to the date of transfer, to the extent provided for in the applicable memorandum of understanding.

(2) Employees transferred from the county or medical center to the authority who are subject to a memorandum of understanding between the authority and an exclusive employee representative, as described in paragraphs (2) and (3) of subdivision (d), and who were not members of the Kern County Employees' Retirement Association at the time of their transfer of employment, shall subsequently become a member of the Kern County Employees' Retirement Association only to the extent provided for in the applicable memorandum of understanding.

(3) Employees transferred from the county or medical center to the authority who are not subject to a memorandum of understanding between the authority and an exclusive employee representative, as described in paragraphs (2) and (3) of subdivision (d), and who were members of the Kern County Employees' Retirement Association at the time of their transfer

of employment, shall continue to be a member of the Kern County Employees' Retirement Association, retaining service credit earned to the date of transfer, as provided in the enabling ordinance or the personnel transition plan.

(4) Employees transferred from the county or medical center to the authority who are not subject to a memorandum of understanding between the authority and an exclusive employee representative, as described in paragraphs (2) and (3) of subdivision (d), and who were not members of the Kern County Employees' Retirement Association at the time of their transfer of employment, shall subsequently become a member of the Kern County Employees' Retirement Association only to the extent provided in the enabling ordinance or the personnel transition plan.

(5) Employees hired by the authority on or after the effective date of the transfer of control of the medical center shall become a member of the Kern County Employees' Retirement Association only to the extent provided in the enabling ordinance or personnel transition plan described in subdivision (a), or, if subject to a memorandum of understanding between the authority and an exclusive employee representative as described in paragraphs (2) and (3) of subdivision (d), to the extent provided for in the applicable memorandum of understanding.

(6) (A) Notwithstanding any other law, for purposes of California Public Employees' Pension Reform Act of 2013 (Article 4 (commencing with Section 7522) of Chapter 21 of Division 7 of Title 1 of the Government Code), an individual who was employed by the county or the medical center when it was a constituent department of the county, and is a member of the Kern County Employees' Retirement Association or the Public Employees' Retirement System, as set forth in Part 3 (commencing with Section 20000) of Division 5 of Title 2 of the Government Code or a member prior to January 1, 2013, and who transfers, directly or after a break in service of less than six months, to the authority, in which the individual continues to be a member of either the Kern County Employees' Retirement Association or the Public Employees' Retirement System, as applicable, shall not be deemed to be a new employee or a new member within the meaning of Section 7522.04 of the Government Code, and shall continue to be subject, immediately after the transfer, to the same defined benefit formula, as defined in Section 7522.04 of the Government Code, and plan of replacement benefits offered by the county pursuant to Section 31899.4 of the Government Code and the Kern County Replacement Benefits Plan for retirement benefits limited by Section 415 of Title 26 of the United States Code.

(B) For purposes of subdivision (c) of Section 7522.43 of the Government Code, the authority shall be treated as a public employer that offered a plan of replacement benefits prior to January 1, 2013. The county's plan of replacement benefits that was in effect prior to January 1, 2013, is deemed to also be the authority's replacement plan for the sole purpose of allowing the authority to continue to offer the plan of replacement benefits, immediately after the transfer, for Kern County Employees' Retirement

Association members who meet both of the following requirements, and the qualifying survivors or beneficiaries of those members:

(i)  The employee was employed as of January 1, 2013, by the county or the medical center when it was a constituent department of the county.

(ii)  The employee is part of a member group to which the county offered a plan of replacement benefits prior to January 1, 2013.

(7) (A) Notwithstanding any other law, legacy employees shall be deemed to be county employees for purposes of participation in a benefit plan administered by the Kern County Employees' Retirement Association, but only for that purpose, and shall not be employees of the county for any other purpose. Upon the transfer of control of the medical center and thereafter, the county shall include legacy employees in a special county employee group for which the county has primary financial responsibility to fund all employer contributions that, together with contributions by employees and earnings thereon, are necessary to fund all benefits for legacy employees administered by the Kern County Employees' Retirement Association, notwithstanding the fact that, following the transfer of control of the medical center, the authority shall commence making periodic employer contributions for legacy employees. In the event the authority fails to make required employer contributions for legacy employees when due and after demand from the Kern County Employees' Retirement Association, the county, after receipt of notice and demand from the Kern County Employees' Retirement Association, shall be obligated to make those contributions in place of the authority.

(B)  The authority shall be primarily responsible for any employer contributions that, together with contributions by employees and earnings thereon, are necessary to fund all benefits for new employees. In the event the authority fails to make required contributions for new employees, the county shall be obligated to make the required contributions after receipt of notice and demand from the Kern County Employees' Retirement Association. The county shall maintain this obligation for new employees until the authority demonstrates, and the Kern County Employees' Retirement Association's Board of Retirement determines, that the authority is sufficiently capable financially to fully assume the obligation to make all employer contributions for new employees, based upon the standard of financial capability approved by the Kern County Employees' Retirement Association and the county in a plan of participation, and incorporated within a written agreement between the county and the authority. In the event the authority fails to make required contributions for any new employees due to the authority's dissolution or bankruptcy, the county shall be obligated to make the required contributions after receipt of notice and demand from the Kern County Employees' Retirement Association.

(h)  An employee hired by the authority on or after the operative date of the act adding this subdivision shall be a member of the Kern County Employees' Retirement Association, except as modified in an applicable memorandum of understanding.

(i)  This chapter does not prohibit the authority from contracting with the Public Employees' Retirement System, in accordance with the requirements of Section 20508 and any other applicable provisions of Part 3 (commencing with Section 20000) of Division 5 of Title 2 of the Government Code, for the purpose of providing employee participation in that system, or from establishing an alternative or supplemental retirement system or arrangement, including, but not limited to, deferred compensation arrangements, to the extent permitted by law and subject to any applicable agreement between the authority and the exclusive employee representatives, and as provided in the enabling ordinance or the personnel transition plan. Notwithstanding any other law, the authority and employees of the authority shall not participate in the Public Employees' Retirement System if the Board of Administration of the Public Employees' Retirement System, in its sole discretion, determines that their participation could jeopardize the Public Employees' Retirement System's tax-qualified or governmental plan status under federal law, or if a contract or related contract amendment proposed by the authority contains any benefit provisions that are not specifically authorized by Part 3 (commencing with Section 20000) of Division 5 of Title 2 of the Government Code, and that the board determines would adversely affect the administration of the system.

(j)  Provided that this is not inconsistent with anything in this chapter, this chapter does not prohibit the authority from determining the number of employees, the number of full-time equivalent positions, job descriptions, the nature and extent of classified employment positions, and salaries of employees.

SEC. 40.  Section 2716.5 is added to the Penal Code, to read:

2716.5.  (a)  There is hereby established the Pre-Release Construction Trades Certificate Program, hereinafter referred to in this section as "the program," in the Department of Corrections and Rehabilitation, hereinafter referred to in this section as the "department," to increase employment opportunities in the construction trades for inmates upon release.

(b)  The department shall establish a joint advisory committee for the purpose of implementation of the program. The committee shall be composed of representatives from building and construction trades employee organizations, the State Building and Construction Trades Council of California, joint apprenticeship training programs, the Prison Industry Authority, the Division of Apprenticeship Standards, the Labor and Workforce Development Agency, and any other representatives the department determines appropriate. The responsibilities of the committee shall include, but are not be limited to, the following:

(1)  Develop guidelines for the participation of inmates in preapprenticeship training programs, as described in subdivision (e) of Section 14230 of the Unemployment Insurance Code. The guidelines shall provide for the integration, for all inmate preapprenticeship training programs in the building and construction trades, of the multicraft core curriculum implemented by the State Department of Education for its California

Partnership Academies pilot project and by the California Workforce Development Board and local boards.

(2)  Develop and implement a pre-release construction trades certification that validates that an inmate completed instruction, skills, and competencies required by and recognized by the participating building and construction trades.

(3)  Ensure compliance with any applicable requirements and regulations of the Division of Apprenticeship Standards.

(4)  Evaluate pre-release on-the-job training opportunities to compare and match competencies with those of registered apprentices in the building and construction trades.

(5)  Explore the feasibility of the electronic tracking of each participating inmate's relevant activities to efficiently capture competencies related to the certification.

(6)  Explore the pre-release awarding of formal credit for apprenticeship hours recognized by joint apprenticeship training programs and the Division of Apprenticeship Standards.

(7)  Facilitate the admission of graduates of inmate preapprenticeship programs, after release, into state-approved apprenticeship programs and for apprenticeship programs to evaluate such individuals for admission with advanced standing based on prior coursework and work experience.

SEC. 41.  Section 14038 is added to the Unemployment Insurance Code, to read:

14038.  All criteria, guidelines, and policies developed by the California Workforce Development Board for the administration of the initiative shall be exempt from the rulemaking provisions of the Administrative Procedures Act (Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code).

SEC. 42.  Article 4 (commencing with Section 14040) is added to Chapter 3 of Division 7 of the Unemployment Insurance Code, to read:

### Article 4.  Prison to Employment Program

14040.  For purposes of this article, the following definitions shall apply:

(a)  "Earn and learn" has the same meaning as in subdivision (q) of Section 14005.

(b)  "Justice involved" refers to individuals who are on parole, probation, mandatory supervision, or postrelease community supervision and are supervised by, or are under the jurisdiction of, a county or the California Department of Corrections and Rehabilitation.

(c)  "Prison to employment regional partnership" or "regional partnership" means a partnership established to develop a regional plan that coordinates reentry and workforce services in each of the state's 14 workforce regions established pursuant to the federal Workforce Innovation and Opportunity Act (Public Law 113-128), so that the formerly incarcerated and other justice-involved individuals in these regions can find and retain employment.

Partners in a regional partnership shall include local workforce development boards, the California Department of Corrections and Rehabilitation, Division of Adult Parole Operations, community-based organizations that serve the formerly incarcerated and other justice-involved individuals, and reentry service providers. Partners may include other stakeholders, as specified by the board.

(d) "Prison to employment regional plan" or "regional plan" is the plan developed by a regional partnership to coordinate reentry and workforce services in each of the state's 14 workforce regions. The prison to employment regional plan is a component of each federal Workforce Innovation and Opportunity Act regional workforce plan.

(e) "Supportive services" are services necessary to enable an individual to successfully participate in, or receive, workforce, education, and other related services authorized under subdivision (c) of Section 1234.3 of the Penal Code, Section 14035 of this code, as well as the federal Workforce Innovation and Opportunity Act and its corresponding regulations.

(f) "Workforce, education, and related services" include services authorized under subdivision (c) of Section 1234.3 of the Penal Code, Section 14035 of this code, as well the federal Workforce Innovation and Opportunity Act and its corresponding regulations.

14041. The board shall administer a prison to employment program pursuant to this article and shall award grants for the following purposes:

(a) The development of regional partnerships and regional plans to provide and coordinate the necessary workforce, education, and related services that formerly incarcerated and other justice-involved individuals need to secure and retain employment and reduce the chances of recidivism.

(b) The implementation of the regional plans, including the provision of workforce, education, and related services and supportive services outlined in these regional plans.

(c) The provision of earn and learn opportunities for formerly incarcerated and other justice-involved individuals participating in the program.

14042. (a) Prior to awarding grants pursuant to Section 14041, the board shall develop and adopt guidelines and policies for the program, including, but not limited to, required regional plan content, required and optional regional plan partners, required activities of the regional partnerships, and guidelines for the allocation of grants, including planning guidance, timelines, and selection criteria for the distribution and evaluation of grant awards. The board shall consider factors including, but not limited to, the need for workforce services for the formerly incarcerated and justice-involved individuals in each region, the size of post-release populations, and the recidivism rate in each region.

(b) The board shall ensure that the guidelines developed pursuant to subdivision (a) are consistent with paragraph (7) of subdivision (b) of Section 1234.2 of, and subdivision (b) and paragraph (1) of subdivision (e) of Section 1234.3 of, the Penal Code, and Section 14031 of, and paragraph (4) of subdivision (c) and paragraphs (3) and (4) of subdivision (d) of Section 14032 of, this code.

(c)  Grants made pursuant to this article shall be evaluated using criteria consistent with those set forth in subdivisions (b) to (d), inclusive, of Sections 14033. The board may utilize additional criteria to evaluate these grants.

(d)  (1)  The criteria guidelines, and policies shall be exempt from the rulemaking provisions of the Administrative Procedures Act (Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code).

(2)  The board shall make the criteria, guidelines, and policies available to the public.

SEC. 43.  Article 5 (commencing with Section 14100) is added to Chapter 3 of Division 7 of the Unemployment Insurance Code, to read:

Article 5.  Breaking Barriers in Employment for Adults with Autism Pilot Program

14100.  For purposes of this article, the following terms have the following meanings:

(a)  "Autism" includes autism spectrum disorder.

(b)  "California Workforce Development Board" or "board" means the California Workforce Development Board established pursuant to Article 1 (commencing with Section 14010).

(c)  "Pilot program" means the Breaking Barriers in Employment for Adults with Autism Pilot Program.

(d)  "Targeted population" means adults with autism.

14101.  (a)  This article establishes the Breaking Barriers in Employment for Adults with Autism Pilot Program to be administered by the California Workforce Development Board. The pilot program shall run until January 1, 2022, in Sacramento and Los Angeles counties.

(b)  The program shall be developed and implemented in accordance with the criteria set forth in Section 14102 for the purposes of increasing long-term employment opportunities for young adults with autism.

(c)  The outcomes from the program shall be reported pursuant to Section 14104.

14102.  The board shall administer the pilot program as follows:

(a)  Work with an experienced nonprofit organization on the outreach, selection, training, and compensation of young adults with autism to participate in the program.

(b)  In collaboration with stakeholders, create a manual to train employers in building workplace capacity for the targeted population. Young adults selected pursuant to subdivision (a) shall participate in the stakeholder meetings and provide input on the content of the employer manual.

(c)  Once the manual is developed pursuant to subdivision (b), implement free employer trainings in Sacramento and Los Angeles counties based on the manual. The trainings shall include participation and personal testimony from young adults selected and trained pursuant to subdivision (a).

14103.   (a)  The board may administer the pilot program through a contract with a private, nonprofit organization for coordination and staff support.

(b)  Eligible uses of pilot program funds include, but are not limited to, stakeholder outreach, student trainings, employer trainings, administrative resources, and stipends for participating young adults.

14104.   By December 31, 2021, the board shall submit a report to the Legislature, in accordance with Section 9795 of the Government Code. The report shall contain all of the following information:

(a)  The overall success of the pilot program.

(b)  An evaluation of the effectiveness of the program for the targeted population.

14105.   This article shall remain in effect until January 1, 2022, and as of that date is repealed.

SEC. 44.   Section 3.60 of (Chapter 181 of the Statutes of 2017) is amended to read:

Sec. 3.60.   (a)  Notwithstanding any other law, the employers' retirement contributions for the 2017–18 fiscal year that are chargeable to any item with respect to each state officer and employee who is a member of the Public Employees' Retirement System (PERS) or the Judges' Retirement System II and who is in that employment or office shall be the percentage of salaries and wages by state member category, as follows:

| | |
|---|---|
| Miscellaneous, First Tier | 28.423% |
| California State University, Miscellaneous, First Tier | 28.423% |
| Miscellaneous, Second Tier | 28.423% |
| State Industrial | 20.408% |
| State Safety | 20.584% |
| Peace Officer/Firefighter | 44.245% |
| California State University, Peace Officer/Firefighter | 44.245% |
| Highway Patrol | 54.104% |
| Judges' Retirement System II | 26.409% |

The Director of Finance may adjust amounts in any appropriation item, or in any category thereof, as a result of changes from amounts budgeted for employer contributions for 2017–18 fiscal year retirement benefits to achieve the percentages specified in this subdivision. Beginning in the 2013–14 fiscal year, adjustments to the California State University (CSU)

rates are applied to the actual pensionable 2013–14 fiscal year payroll, which is $2,307,876,000, as identified by the Controller. This process establishes pension funding adjustments through this section for CSU, as reflected in provisional language in Item 6610-001-0001. This results in pension funding for CSU of $621,483,000 General Fund for the 2016–17 fiscal year. These amounts also will be part of the total appropriation in Item 6610-001-0001 of the Budget Act of 2017.

(b)  Notwithstanding any other law, the Director of Finance shall require retirement contributions computed pursuant to subdivision (a) to be offset by the Controller with surplus funds in the Public Employees' Retirement Fund, employer surplus asset accounts.

(c)  Notwithstanding any other law, for purposes of calculating the "appropriations subject to limitation" as defined in Section 8 of Article XIII B of the California Constitution, the appropriations shall be deemed to be the amounts remaining after the adjustments required by subdivisions (a) and (b) are made.

(d)  Of the percentage of salaries and wages by state member categories identified in subdivision (a), the following percentages are estimated to be the result of the increased employee contributions pursuant to Chapter 296 of the Statutes of 2012 (AB 340), known as the California Public Employees' Pension Reform Act of 2013, and will be directed toward the state's unfunded pension liability:

| | |
|---|---|
| Miscellaneous, First Tier | 0.098% |
| California State University, Miscellaneous, First Tier | 0.098% |
| Miscellaneous, Second Tier | 0.098% |
| State Industrial | 0.881% |
| State Safety | 1.182% |
| Peace Officer/Firefighter | 1.647% |
| California State University, Peace Officer/Firefighter | 1.647% |
| Highway Patrol | 1.319% |

The contributions to the unfunded liability, as a result of the percentages of salaries and wages in this subdivision, are estimated to be $111,730,000 ($77,707,000 General Fund) for the 2017–18 fiscal year.

(e)  The Director of Finance may adjust the percentage levels of the employers' retirement contributions listed in subdivisions (a) and (d) as a result of rates provided by the Board of Administration of the Public Employees' Retirement System. The Director of Finance shall notify the

Controller by executive order of adjustments made pursuant to this subdivision. Within 30 days of making an adjustment pursuant to this subdivision, the Director of Finance shall report the adjustment in writing to the Chairperson of the Joint Legislative Budget Committee and the chairpersons of the committees in each house of the Legislature that consider appropriations.

(f) (1) In addition to the employers' retirement contributions listed in subdivisions (a) and (d), the Department of Finance may direct the Controller to transfer up to the amount identified for appropriation pursuant to subclause (IV) of clause (ii) of subparagraph (B) of paragraph (1) of subdivision (c) of Section 20 of Article XVI of the California Constitution equivalent to the amount described in paragraph (3) of subdivision (d) of Section 35.50 to supplement the state's retirement contributions for the 2017–18 fiscal year.

(2) The Department of Finance shall direct the Controller to transfer the amount specified in paragraph (1) to either of the following:

(A) The Public Employees' Retirement Fund.

(B) The Surplus Money Investment Fund and other funds in the Pooled Money Investment Account that accrue interest to the General Fund, for repayment of principal and interest of a cash loan that was made to supplement the state's retirement contributions.

(3) The supplemental payment described in this subdivision is for unfunded liabilities for state-level pension plans in excess of current base amounts for the 2017–18 fiscal year. Therefore, any amount transferred to a fund identified in paragraph (2) constitutes an obligation pursuant to subclause (IV) of clause (ii) of subparagraph (B) of paragraph (1) of subdivision (c) of Section 20 of Article XVI of the California Constitution.

(4) The Department of Finance shall provide the Controller a schedule of the timing and amounts to be used for purposes of this subdivision.

SEC. 45.   The California Complete Count Census shall submit the following reports to the Joint Legislative Budget Committee, the Assembly Select Committee on the Census, and the Senate Select Committee on the 2020 United States Census:

(a)   The Complete Count Census will provide the Joint Legislative Budget Committee, the Assembly Select Committee on the Census, and the Senate Select Committee on the 2020 United States Census with a progress report on the Census infrastructure by October 1, 2018. Additionally, beginning on January 1, 2019, and quarterly thereafter through July 1, 2021, a report on both of the following:

(1) A Complete Count Census overall budget, including the annual allocations for community-based organizations, media outreach, and local complete count committees and other local government entities. All expenditures and encumbrances shall be detailed.

(2) The total amount of funds allocated to organizations. As feasible, the funding total shall be broken out by region.

(b)   On or before January 1, 2019, a report on the Complete Count Census school-based curriculum pilot projects, including development, deployment,

and refinement elements, both completed and planned, and project contracting agreements.

(c)  On or before January 1, 2019, a report on the Complete Count Census staff infrastructure that includes current and projected California Complete Count regional office staffing and hiring plans.

(d)  On or before January 1, 2019, a report on the Complete Count Census statewide outreach and rapid deployment tool that includes the status of the project's development, deployment, and refinement elements, both completed and planned, and project contracting agreements.

(e)  On or before January 1, 2019, a Complete Count Census report on statewide readiness and needs assessment for the federal decennial census. The report shall be a final convening report that identifies the key trends and findings uncovered by the series of regional meetings.

SEC. 46.   The Legislature finds and declares that the amendments made to Section 23725 of the Government Code by this act shall apply retroactively to any initiative charter amendment authorized by that section for which proponents submitted petition signatures to the county elections official on or after January 1, 2018. To the extent petition signatures for an initiative measure proposing an amendment to the charter of the County of San Diego pursuant to Section 23725 of the Government Code are submitted to the county elections official before this act becomes law, the elections official shall examine or reexamine whether the number of valid signatures filed by the proponents is sufficient to qualify the measure for the ballot pursuant to this act.

SEC. 47.   The provisions of this act are severable. If any provision of this act or its application is held invalid, that invalidity shall not affect other provisions or applications that can be given effect without the invalid provision or application.

SEC. 48.   The Legislature finds and declares that Section 16 of this act, which amends Section 3556 of the Government Code, impose a limitation on the public's right of access to the meetings of public bodies or the writings of public officials and agencies within the meaning of Section 3 of Article I of the California Constitution. Pursuant to that constitutional provision, the Legislature makes the following findings to demonstrate the interest protected by this limitation and the need for protecting that interest:

This act balances the right of the public to access writings of public agencies while protecting the privacy of employees.

SEC. 49.   (a)  The Legislature finds and declares that, with respect to Section 35 of this act, a special statute is necessary and that a general statute cannot be made applicable within the meaning of Section 16 of Article IV of the California Constitution because of the unique issues facing the County of San Diego due to its size and the complexity of its government.

(b)  The Legislature finds and declares that, with respect to Section 43 of this act, a special statute is necessary and that a general statute cannot be made applicable within the meaning of Section 16 of Article IV of the California Constitution because of the existing resources available and the

— **46** —

unique need to establish a pilot program to assist with the employment of adults with autism in the Counties of Los Angeles and Sacramento. .

SEC. 50.   No reimbursement is required by this act pursuant to Section 6 of Article XIII B of the California Constitution because the only costs that may be incurred by a local agency or school district under this act would result from a legislative mandate that is within the scope of paragraph (7) of subdivision (b) of Section 3 of Article I of the California Constitution.

However, if the Commission on State Mandates determines that this act contains other costs mandated by the state, reimbursement to local agencies and school districts for those costs shall be made pursuant to Part 7 (commencing with Section 17500) of Division 4 of Title 2 of the Government Code.

SEC. 51.   This act is a bill providing for appropriations related to the Budget Bill within the meaning of subdivision (e) of Section 12 of Article IV of the California Constitution, has been identified as related to the budget in the Budget Bill, and shall take effect immediately.

O

## CERTIFICATE OF SERVICE

Case Name: **Seager, Irene v. United Teachers Los Angeles, et al.**   Case No.:   **2:19-cv-00469**

I hereby certify that on May 29, 2019, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT CALIFORNIA ATTORNEY GENERAL'S MOTION FOR JUDGMENT ON THE PLEADINGS**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on May 29, 2019, at Los Angeles, California.

Colby Luong
Declarant

/s/ *Colby Luong*
Signature

SA2019100448
53453334.docx